CHENEY, Plaintiff in error, v. STATE, Defendant in error.*

*No. State 59. Argued October 3, 1969.—Decided October 28, 1969.*
(Also reported in 171 N. W. 2d 339; 174 N. W. 2d 1.)

* Motion for rehearing denied, without costs, on December 19, 1969.

456

For the plaintiff in error there was a brief by *Francis R. Croak,* attorney, and *Grootemaat, Cook & Franke* of counsel, all of Milwaukee, and oral argument by *Mr. Croak.*

For the defendant in error the cause was argued by *Michael Ash,* assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren,* attorney general, and *E. Michael McCann,* district attorney.

WILKIE, J. On this writ of error, the defendant raises four issues:

1. Was it an abuse of discretion to admit evidence of alleged acts of subsequent misconduct by the defendant without affording the defendant notice prior to trial?

2. Were the instructions of the trial court with reference to the testimony of an accomplice erroneous?

3. Was it an abuse of discretion to impose the maximum sentence (fifteen years) on the defendant who was a first offender?

4. Was the imposition of the maximum sentence with no credit for time served prior to the imposition of the sentence (forty-nine days) a denial of equal protection?

1. *Did the trial court abuse its discretion in admitting the Kasik testimony?*

The central dispute on this review is the admissibility of the Kasik testimony.

It is established that testimony regarding other bad conduct on the part of a defendant is not inadmissible merely because this other conduct does not amount to a crime in and of itself.[2] It is not necessary that this conduct result in a conviction. Similarly, it is established that evidence of this other conduct does not have to be limited to prior to the crime charged but can be, and often is, related to conduct occurring after the crime charged but prior to the trial.[3]

Nevertheless, no part of the law of evidence in criminal proceedings is more consistently and strenuously litigated than that having to do with the admissibility of evidence of prior crimes, incidents, or occurrences. In *Whitty v. State*,[4] this court thoroughly re-examined the admissibility of this evidence and made it clear that such evidence is not admissible for purposes of proving general char-

---

[2] *See State v. Reynolds* (1965), 28 Wis. 2d 350, 137 N. W. 2d 14, wherein this court spoke of "other occurrences."

[3] *See State v. Lombardi* (1959), 8 Wis. 2d 421, 99 N. W. 2d 829.

[4] (1967), 34 Wis. 2d 278, 149 N. W. 2d 557.

acter, criminal propensity, or general disposition on the issue of guilt or innocence because such evidence, while having probative value, is not legally or logically relevant to the crime charged. The evidence is admissible, however, when it is

". . . particularly probative in showing elements of the specific crime charged, intent, identity, system of criminal activity, to impeach credibility, and to show character in cases where character is put in issue by the defendant." [5]

It has been argued that the rule is properly phrased as admitting evidence of other crimes where relevant unless the evidence can only be used to establish the defendant's disposition to commit the crime as a basis for an inference that he did commit the crime.[6]

In *Whitty* this court adopted Rule 303 of the American Law Institute Model Code of Evidence [7] under which "the trial court balances relevancy against prejudice." [8] The record reveals that in the instant case the trial judge extensively went through the critical balancing process called for in *Whitty*.

In the instant case the question of prior-crime evidence arises at a procedurally different point in the trial than it did in *Whitty*. Here, the state introduced the evidence of the defendant's dealings with Kasik in its case in chief, whereas in *Whitty*, the other-crime evidence was

---

[5] *Id.* at page 292.

[6] *See* Lacy, *Admissibility of Evidence of Crimes Not Charged in the Indictment.* 31 Or. L. Rev. (1952), 267.

[7] Rule 303. DISCRETION OF JUDGE TO EXCLUDE ADMISSIBLE EVIDENCE. "(1) The judge may in his discretion exclude evidence if he finds that its probative value is outweighed by the risk that its admission will (a) necessitate undue consumption of time, or (b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury, or (c) unfairly surprise a party who has not had reasonable ground to anticipate that such evidence would be offered."

[8] *State v. Midell* (1968), 39 Wis. 2d 733, 737, 159 N. W. 2d 614.

admitted during rebuttal by the state. Even though there was notice of alibi filed in the instant case, there was nothing at this point of the trial to indicate what the defense might be. An Illinois case touches briefly on this issue. In *People v. Cole*,[9] defendant was prosecuted for selling narcotics to an agent on one date. Evidence of earlier sales to the same agent on two prior dates was held to have been properly admitted. The court there said:

"Defendant asserts that since he admitted being with agent Cook on October 10, his identity was not in issue and since he denied giving Cook a package or receiving money, his guilty knowledge was not in issue. This assertion overlooks the fact, however, that these were two elements to be proved by the People and there was no way of knowing what defense, if any, would be interposed. . . . The People cannot be required to confine this evidence of prior transactions to rebuttal since there may be no rebuttal if defendant offers no evidence." [10]

We conclude that such evidence as was embodied in the Kasik testimony here can be offered by the state during its case in chief as well as in rebuttal.

This brings us to defendant's main contention on this review, that it was an abuse of discretion for the trial court to admit the testimony of Kasik without prior notice to the defense that Kasik and FBI Agent Smith were going to testify. The defendant asks this court to modify its decision in *Whitty* and adopt the rule of the Minnesota court as announced by that court in *State v. Spreigl*.[11] That case requires that notice be given to the defendant a reasonable time before the trial if the state plans to offer evidence of other misconduct. Such evidence is inadmissible if the state does not furnish the defendant a written statement of the prior offense,

[9] (1963), 29 Ill. 2d 501, 194 N. E. 2d 269.
[10] *Id.* at page 504.
[11] (1965), 272 Minn. 488, 139 N. W. 2d 167.

describing that offense with the same particularity that would be required in an indictment or an information.

This court in *Whitty* rejected *Spreigl,* stating:

". . . While this rule may eliminate the surprise on the part of an accused, it does little to eliminate any confusion of issues, misleading of the jury, or undue prejudice." [12]

Nothing has transpired since *Whitty,* nor has counsel advanced any argument that persuades us we were incorrect in *Whitty* in rejecting *Spreigl.*

In essence, the defendant claims that the trial court was in error in applying Rule 303 to the Kasik testimony not because it (a) necessitated undue consumption of time, or (b) created substantial danger of undue prejudice or of confusing the issues or of misleading the jury, but because (c) defendant was unfairly surprised and did not have reasonable ground to anticipate such evidence would be offered. We think the record is otherwise. The record reveals that the prosecuting attorney did know of the existence of Kasik more than six months prior to trial, although it is unclear whether Kasik was known by name. It also appears that Kasik was subpoenaed by the state four days prior to the commencement of the trial and arrived in Milwaukee the day before the trial started.

But it also appears that after the jury had been selected on August 14, 1967, and the day before any testimony was taken, the prosecuting attorney told defense counsel that a witness from out of town would be present to testify about an uncharged matter. In addition, Schmidt, the state's first witness was asked during direct examination if he knew Kasik, and defense counsel objected to this question. Also, Kasik's direct testimony did not begin until August 16th and the cross-examination did not start until August 17, 1967.

---

[12] *Whitty v. State, supra,* footnote 4, at page 297.

From this record we are satisfied that the defense claim of unfair surprise cannot be sustained. Likewise, defendant's argument that the trial judge did not even consider the issue of unfair surprise is not supported by the record.

The defendant's request that this court modify *Whitty* to require that prior notice be given to the defense of witnesses the prosecution is going to use, is made at a time when there is presently before the legislature of this state a bill that would provide for such a result.[13]

Sec. 971.23 (3) and (6) of the proposed bill provides:

"**971.23 Discovery and inspection.** . . .

"(3) LIST OF WITNESSES. (a) A defendant may, not less than 15 days nor more than 30 days before trial, serve upon the district attorney an offer in writing to furnish the state a list of all witnesses the defendant intends to call at the trial, whereupon within 5 days after the receipt of such offer, the district attorney shall furnish the defendant a list of all witnesses and their addresses whom he intends to call at the trial. Within 5 days after the district attorney furnishes such list, the defendant shall furnish the district attorney a list of all witnesses and their addresses whom the defendant intends to call at the trial. This section shall not apply to rebuttal witnesses or those called for impeachment only.

". . .

"(6) PROTECTIVE ORDER. Upon motion of a party, the court may at any time order that discovery, inspection or the listing of witnesses be denied, restricted or deferred, or make other appropriate orders. If the district attorney certifies that to list a witness may subject the witness or others to physical or economic harm or coercion, the court may order that the deposition of the witness be taken pursuant to s. 967.04 (2) to (6). . . ."[14]

The comment following this proposal states:

"NOTE: This section is the first Wisconsin statute attempting to afford pretrial discovery to both the State

---

[13] *See* Assembly Bill 603, passed Assembly July 18, 1969.
[14] *Id.* at pages 105, 106.

and the defendant. Based primarily upon F. R. Cr. P. 16, it is believed that the section represents an improvement in the existing pretrial procedures while protecting the basic rights of the parties. Limited pretrial discovery should increase the efficient administration of criminal justice in this state by speeding up the disposition of cases, improving the performance of counsel, eliminating the increasing number of pretrial motions and increasing the number of guilty pleas. The section contemplates that most of the discovery provisions are to be implemented without the necessity for motions or court hearings.

" . . .

"Sub. (3) is not a requirement for a listing of prosecution witnesses in each case. Some 22 states have requirements which make mandatory a notification prior to trial of witnesses intended to be called by the state. This subsection, modeled after Fla. Cr. P. R. 1.220(e), is a procedure whereby the defendant may obtain the names of state's witnesses after agreeing to tender to the district attorney the names of all defense witnesses. If the defendant is unwilling to disclose his own witnesses, then he is not entitled to learn the names of the state's witnesses. In those cases where the disclosure of the names of the state's witnesses might cause some danger to the witnesses, or in some other way jeopardize the public interest, sub. (6) provides a vehicle for obtaining a protective order denying such disclosure.

" . . . ." [15]

It should also be noted that the American Bar Association *Standards Relating to Discovery and Procedure Before Trial* (Tent. Draft, May 1969), contains the following:

"2.1 **Prosecutor's obligations.**

"(a) Except as is otherwise provided as to matters not subject to disclosure . . . the prosecuting attorney shall disclose to defense counsel the following material and information within his possession or control:

"(i) the names and addresses of persons whom the prosecuting attorney intends to call as witnesses at the

---

[15] *Id.* at pages 107, 108.

hearing or trial, together with their relevant written or recorded statements; . . . ." [16]

The comment to this section states:

". . . This subsection not only facilitates plea discussions and agreements but also goes to the heart of the general proposition that defense counsel must be permitted to prepare adequately to cross-examine the witnesses against the accused and otherwise test their credibility, as well as to produce other evidence relevant to the facts in issue. . . . It has been suggested that the right to advance notice of witnesses against one and their prior statements may be required by the sixth amendment and by due process. *Palermo v. United States*, 360 U. S. 343, 362–66 (1959) ; see *Jencks v. United States*, 353 U. S. 657 (1957) ; Note, 20 Okla. L. Rev. 422 (1967). . . ." [17]

It can be seen from both these proposals and their commentary that neither specifically covers the problem here presented, *i.e.*, prior notice of witnesses whom the state intends to call to testify about prior misconduct of the accused. But, it must be pointed out that neither specifically excludes this type of witness from its ambit. In fact, it would seem that the term "witnesses" as used in both proposals would be sufficiently broad to cover this type of witness.

The important difference between the current legislative proposal and the ABA minimum standard is that the former contemplates reciprocity in the exchange of lists of witnesses by the state and the defendant. For the defendant to obtain the state's list of witnesses he must be willing to indicate his.

We have said several times that the matter of pretrial discovery in criminal matters is a matter for proper treatment by rule rather than on an individual case-by-case basis. [18] Such legislation is now pending and the

---

[16] ABA *Minimum Standards Relating to Discovery and Procedure Before Trial* (Tent. Draft, May, 1969), Part II, Disclosure to Accused, sec. 2.1, p. 52.

[17] *Id.* at page 56.

[18] *State v. Miller* (1967), 35 Wis. 2d 454, 151 N. W. 2d 157; *Ramer v. State* (1968), 40 Wis. 2d 79, 161 N. W. 2d 209; *Watkins*

adoption of the procedure for exchanging lists of witnesses, as contemplated by the current legislative proposal, would be a step forward in the better administration of criminal justice.

2. *Did the trial court give an erroneous instruction regarding accomplices?*

The trial court, in instructing the jury, gave the standard instruction as found in the Wisconsin Jury Instruction—Criminal, Part I, 245, on accomplices, but omitted the following language: [19]

"But ordinarily, it is unsafe to convict upon the uncorroborated testimony of an accomplice. You should not base a verdict of guilty upon it alone, unless after such scrutiny and consideration it satisfies you of the guilt of the defendant beyond a reasonable doubt."

It is clear that Kasik was not an accomplice in the true sense of the word since he was not a participant in the particular crime charged.[20] Hence, it was not error for the trial court to refuse to give the accomplice instruction with respect to his testimony.

Schmidt, on the other hand, was an accomplice. However, the instruction is aimed at the situation where the state's case against the accused consists of nothing more than the accomplice's testimony. The defense at oral argument relied heavily upon the case of *Abaly v. State*.[21] In that case the defendant was convicted of sodomy. In reversing for several errors that occurred during trial this court said:

"The court charged the jury that it was for them to determine whether the evidence of the complaining witness was corroborated and refused to give the instruction

*v. State* (1968), 40 Wis. 2d 398, 162 N. W. 2d 48; *State ex rel. Johnson v. County Court* (1968), 41 Wis. 2d 188, 163 N. W. 2d 6.

[19] As altered, this instruction is essentially the standard credibility-of-witness instruction found in Wis J I—Criminal, Part I, 300.

[20] *See* 23 C. J. S., *Criminal Law*, pp. 4–7, sec. 786(2).

[21] (1916), 163 Wis. 609, 158 N. W. 308.

requested by counsel for defendant to the effect that in considering the testimony of the complaining witness the jury should use great caution in weighing his testimony, and that it is ordinarily unsafe to convict upon the uncorroborated testimony of an accomplice, and upon the actual commission of the crime charged against the defendant the complaining witness is not corroborated by any other witness.

"It was prejudicial error to refuse this instruction. There was no evidence corroborating that of the complaining witness upon the actual commission of the crime charged. While one accused of crime may be convicted upon the testimony of an accomplice alone, there is often great danger of injustice being done the accused in convicting upon such evidence, and the court may properly direct an acquittal where the case of the state rests upon such evidence alone. . . . In *Mercer v. Wright,* 3 Wis. 645, it was held that the jury ought not to convict upon the uncorroborated evidence of an accomplice but that they may lawfully do so." (Citations omitted.) [22]

Defendant's reliance on *Abaly* is misplaced for, in the instant case, there was corroboration. The arson inspector testified that he recovered pipe fragments from the rear of the Allied store—the place where Schmidt testified that defendant placed the pipe bombs.

3. *Was it an abuse of discretion for the trial judge to impose the maximum sentence on the defendant?*

The defendant is a married, thirty-seven-year-old man with one small child, a high school graduate, a service veteran who was honorably discharged, and a first offender. It is now argued that to impose the maximum sentence of fifteen years on the defendant in these circumstances constitutes an abuse of discretion by the trial court.

While it is now settled that this court has the power to review the sentence imposed by the trial court, it is equally well established that it does so only with the utmost

[22] *Id.* at page 612. *See also Sparkman v. State* (1965), 27 Wis. 2d 92, 133 N. W. 2d 776.

reluctance and only in unusual cases.[23] The rationale is that the trial court has the advantage in considering all relevant factors, including the opportunity to observe the defendant.

Here, the trial court eloquently stated before imposing sentence:

> "There is no device, in my view, that symbolizes intimidation and terrorism like a bomb. The destructive range of its power is [uncircumscribed], particularly accompanied with the additional means to conflagrate a fire which, again, makes it doubly uncontrollable.
>
> ". . . [Fire] cannot be pinpointed to a specific target and located. Once fire starts the boundaries are potentially limitless. Each time there is a response to a fire alarm the firemen who respond and the policemen who are called lay their very lives on the line in response to the emergency.
>
> ". . .
>
> ". . . I intend to impose here the maximum sentence which, in my view, for the gravity of the crime, is not at all excessive under any circumstances . . . —this was a very carefully calculated, scientifically conceived, diabolical plot to do serious damage which, fortunately, didn't reach the untold expansion that it might have . . . ."

Moreover, the record here indicates that it was the defendant who built the bombs, it was the defendant who set the bombs, and it was the defendant who initiated the idea. In view of all the circumstances, the imposition of the maximum sentence would not appear to be an abuse of discretion.

4. *Was the imposition of the maximum sentence with no credit for time served prior to the sentence a denial of equal protection?*

---

[23] *See State v. Tuttle* (1963), 21 Wis. 2d 147, 124 N. W. 2d 9; *Jung v. State* (1966), 32 Wis. 2d 541, 145 N. W. 2d 684; *Nelson v. State* (1967), 35 Wis. 2d 797, 151 N. W. 2d 694; *Price v. State* (1967), 37 Wis. 2d 117, 154 N. W. 2d 222; *State v. Beal* (1968), 40 Wis. 2d 607, 162 N. W. 2d 640.

Defendant was arrested on September 30, 1966, taken before a magistrate for his initial appearance, bail was set at $25,000, and defendant remanded to custody. On October 11, 1966, bail was reduced to $5,000 and on October 13, 1966, after being incarcerated thirteen days, defendant posted bond and was released. Then on July 3, 1967, bail was reset at $20,000 and defendant was then incarcerated until the end of the trial on August 18, 1967, or for thirty-six days. Thus, it appears defendant was in jail a total of forty-nine days prior to the sentencing.

Defendant now argues that he was incarcerated before trial solely because of his inability to furnish bond, and that a person with money would have been able to post bond and thus would have been subjected to a lesser period of confinement. This, the defendant argues, denies him equal protection of the law under the United States Constitution.

The only authority cited by defendant is the American Bar Association, *Minimum Standards for Criminal Justice, Standards Relating to Sentencing Alternatives and Procedures* (Approved Draft, 1968). Sec. 3.6 of the publication provides, in part:

"**3.6 Credit**
"(a) Credit against the maximum term and any minimum term should be given to a defendant for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. This should specifically include credit for time spent in custody prior to trial, during trial, pending sentence, pending the resolution of an appeal, and prior to arrival at the institution to which the defendant has been committed." [24]

The commentary after this provision makes it clear that several states now have statutes providing for credit for time served prior to conviction and sentence. Wisconsin does not.

---

[24] ABA *Minimum Standards Relating to Sentencing Alternatives and Procedures* (Approved Draft, 1968), p. 186.

We conclude that it is a matter of proper legislative consideration to adopt or not a rule giving credit for time spent in jail prior to sentencing.

*By the Court.*—Order affirmed.

The following memorandum was filed December 22, 1969.

PER CURIAM (*on motion for rehearing*). The testimony of the arson investigator that he recovered pipe fragments from the rear of the Allied store was in corroboration of Schmidt's testimony because there was testimony that these fragments were similar to the pipes which Kasik testified were turned over to him by Cheney.

Motion for rehearing denied without costs.