KRUSE, Plaintiff in error, v. STATE, Defendant in error.

*No. State 160. Argued April 30, 1970.—Decided June 5, 1970.*
(Also reported in 177 N. W. 2d 322.)

462

For the plaintiff in error there was a brief by *Richard A. Boltz* and *Galloway, Olson, Boltz & Steinbrinck,* all of Green Bay, and oral argument by *Richard A. Boltz.*

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Robert W. Warren,* attorney general, and *John C. Gower,* district attorney of Brown county.

CONNOR T. HANSEN, J. On appeal the defendant contends that (1) the trial court should have allowed his plea of guilty to be withdrawn since he thought that under the plea agreement he would have been eligible for parole in two years, whereas he claims he subsequently discovered he would not be eligible for parole until he had served at least four years of his twenty-five year sentence; (2) he had a constitutional right to be present in chambers while his plea agreement was discussed with the trial judge; and (3) this court should invoke its power to review sentences and to remand for resentencing or modification of sentence.

### Plea agreement.

The trial court assumed, *arguendo,* that the defendant did not know when he would be eligible for parole when he entered his plea and then found that this was not prejudicial. However, the question is not one of prejudice to the defendant, but whether there is manifest injustice in allowing the plea of guilty to stand. In *State v. Reppin* (1967), 35 Wis. 2d 377, 385, 151 N. W. 2d 9, this court adopted the manifest injustice test which allows a defendant to withdraw his plea of guilty if he can prove, by clear and convincing evidence, that his plea was made under any of the following situations:

"American Bar Association Project on Minimum Standards for Criminal Justice—Pleas of Guilty (Tentative Draft, February, 1967), Part II, pp. 9, 10:

" 'Part II. Withdrawal of the plea.
" '2.1 Pleas withdrawal.
" ' . . . .
" '(ii) Withdrawal is necessary to correct a manifest injustice whenever the defendant proves that:
" '(1) he was denied the effective assistance of counsel guaranteed to him by constitution, statute, or rule;
" '(2) the plea was not entered or ratified by the defendant or a person authorized to so act in his behalf;
" '(3) the plea was involuntary, or was entered without knowledge of the charge or that the sentence actually imposed could be imposed; or
" '(4) he did not receive the charge or sentence concessions contemplated by the plea agreement and the prosecuting attorney failed to seek or not to oppose these concessions as promised in the plea agreement. . . .' " (Footnote 2, p. 385)

"We expressly pointed out in *Reppin* that these situations were not exclusive and other facts could constitute a manifest injustice which would require the granting of the withdrawal of the plea of guilty." *Brisk v. State* (1969), 44 Wis. 2d 584, 587, 172 N. W. 2d 199.

The defendant argues that the facts in this case come under standards 2 and 4 in *Reppin.* However, as to standard 2, from an examination of the record, it is clear that the plea was entered and ratified by the defendant in open court at a time when he was represented by counsel. The plea was voluntary and the trial court, in considerable detail, inquired about the defendant's knowledge of the charges and the possible sentences that could be imposed. The parties stipulated that the testimony taken at the preliminary examination could be made a part of the record in the case before the trial judge.

As to standard 4 in *Reppin,* there is no claim that the defendant did not receive the charge or the sentence concessions contemplated by the plea agreement. The record discloses that the prosecuting attorney fully stated the details of the plea agreement in open court in the

presence of the defendant and his counsel and again the trial court fully interrogated the defendant as to his understanding of the agreement. At this point we observe, with deference to the trial judge, that this appeal probably would have been unnecessary had a different procedure been used at the time the pleas were accepted. The information filed November 26, 1968, charged the defendant with first-degree murder. After a series of conferences between defendant's counsel and the prosecutor, a plea agreement resulted whereby the defendant pled guilty to second-degree murder and two counts of aggravated battery. At the time the pleas were accepted on December 17, 1968, the prosecutor made his recommendation to the trial court in accordance with the plea agreement. Without being specific as to the details of defendant's understanding of the agreement, the trial judge inquired in a general way of the defendant as to whether he had conferred with his counsel and as to his understanding of the plea agreement. The defendant replied affirmatively to each of the inquiries so directed to him.[1] Sometime later, after sentencing and while defendant was in the institution, he took the position that it was his understanding he would be eligible for parole in two years, when in fact he would not be eligible for parole for four years. This necessitated appointment of counsel for postconviction proceedings. On defendant's motion to withdraw his pleas, his trial counsel testified at considerable length and his testimony includes the following:

"*A.* I told him that we have reached the agreement, if that's what you call it, that he be sentenced to 15 years on second degree and that he would be sentenced to five years each on the two counts of aggravated assault. I told him that his eligibility for parole as I believed it

[1] There is no question raised on appeal as to the role of the trial court in the plea agreement process. *See State v. Wolfe* (1970), 46 Wis. 2d 478, 175 N. W. 2d 216, 221.

to be would be—and what I got from this conference—would be two years on the second degree murder and an additional year for each one of the other. Now, he did somewhat—I don't know whether to use the word, 'rebel' or object to that. And I further explained to him. I said, 'Bill, it's the best we can do.' And I said, 'A person is not only dead, but there is two that were wounded. And you can't expect to get out on the murder charge in two years anyway.' And he let me know his acceptance of it."

From our examination of the entire record, we conclude that the defendant has not met his burden of establishing a manifest injustice.

In this opinion we have not considered the possible application of the requirements of Federal Rule 11 for the reason that its application is prospective only. *Ernst v. State* (1969), 43 Wis. 2d 661, 170 N. W. 2d 713.

### Conference in chambers.

In addition to the conferences between defendant's counsel and the prosecutor in regard to the plea agreement, at least two conferences were held in chambers. The defendant contends that his failure to be present at the conferences in chambers was violative of his constitutional rights.

In *Ramer v. State* (1968), 40 Wis. 2d 79, 84–86, 161 N. W. 2d 209, this court stated:

"The question here is not waiver but whether the defendant has a right to attend a conference in chambers and admits of no categorical 'yes' or 'no' answer. A conference in chambers might well constitute part of the trial depending upon what matters are discussed or passed upon. Likewise, such a conference might not be a part of the trial in the sense of one's constitutional right to be present. *See* Annot. 85 A. L. R. 2d 1111. When a conference in chambers deals solely with a question of law or preliminary matters of procedure, it has been held not to constitute a part of the trial in the constitutional sense. . . .

" . . . .

"We think, however, that conferences of the court and attorneys outside the presence of the accused should be rarely held during the trial and the trial judge should be solicitous in allowing the defendant to be present at a conference in chambers when he requests it. There is always a risk of the conference exceeding a nonconstitutional scope or causing misunderstanding."

In this case the defendant had the benefit of counsel during the entry of his plea and at the sentencing. *See State v. Strickland* (1965), 27 Wis. 2d 623, 135 N. W. 2d 295. While the practice followed in this case is not commended, such conferences cannot be considered part of any trial in the sense of one's constitutional right to be present when acquiescence to the plea agreement must be made in court and recorded, as was done in this case.

We are of the opinion that in this case no error was committed by the trial court in denying defendant's motion to withdraw his pleas of guilty.

### *Review of sentence.*

Finally, defendant requests that this court invoke its power to review sentences and to remand for resentencing or modification of sentence. However, there is no showing of any abuse of discretion by the trial court and this case is far from the "unusual cases" in which that power should be employed. *Cheney v. State* (1969), 44 Wis. 2d 454, 171 N. W. 2d 339, 174 N. W. 2d 1; *State v. Tuttle* (1963), 21 Wis. 2d 147, 124 N. W. 2d 9.

*By the Court.*—Judgment and order affirmed.

ROBERT W. HANSEN, J. (*concurring*). The defendant claims that, when he pled guilty to second-degree murder and two counts of aggravated battery, he understood that he would be eligible for parole in two years, when in fact he will not be eligible to get out on parole for four years. The majority opinion sets forth the testimony of

defendant's trial counsel stating that the defendant was informed by such trial counsel that the chance to make parole would be ". . . two years on the second-degree murder and an additional year for each one of the other. . . ." So, on the entire record, the majority finds no manifest injustice, and rejects the request of defendant to withdraw his pleas of guilty. There is no reason or basis on which to quarrel with that finding and that result.

However, if the implication is that a misunderstanding on the part of the defendant as to when he could apply for parole, would, if established, warrant a withdrawal of plea, the writer does not agree. Any such hope or expectation or belief as to parole eligibility is no more and no different from the "hopes, expectations or beliefs" as to the punishment to which he might be exposed, which this court has said do not constitute reason for permitting withdrawal of a plea of guilty.[1]

It has become standard operating procedure for defendants in criminal cases, through their counsel, to seek and secure a reduction of the crime charged in exchange for a plea of guilty. Such prearranged bargain for a guilty plea is called by judges and lawyers a "plea agreement" and legitimatized as a necessary accommodative device to meet the pressures of overcrowded criminal court calendars. Other observers see such court decisions based ". . . on what must be done to seal a

---

[1] *See Pulaski v. State* (1964), 23 Wis. 2d 138, 147, 148, 126 N. W. 2d 625, certiorari denied, 379 U. S. 862, 85 Sup. Ct. 124, 13 L. Ed. 2d 65, stating: "If the defendant entered the plea of guilty with the hope and expectation or belief that either the punishment to which he might be exposed would be mitigated and the out-of-county charges would also be consolidated so he could also plead guilty to them, those hopes, expectations, or beliefs, even though induced by his counsel or others, or as a consequence of misinterpretation of things said to him, normally would not constitute a ground for the exercise of the discretion necessary to permit the plea of guilty to be withdrawn. . . ."

bargain for a guilty plea," as ". . . reinforcing in the wrongdoer a smug certainty that the law is something he need never really respect." [2] After the deal is made and the guilty plea entered, it also has become standard procedure for the convicted defendant to equip himself with counsel other than the attorney who represented him at the trial. Then, as here, the claim is made either that the deal made was not kept, or that some misinformation crept into the bargaining process.

Very recently, in three cases decided on the same day, [3] the United States Supreme Court upheld bargained pleas of guilty. [4] These decisions make subsequent disavowal of the admission of guilt and plea on the ground of incorrect assessment of relevant but collateral factors more difficult. [5] Distinguishing earlier cases that involved the possibility of the imposition of the death penalty, the

[2] Downie, Leonard, *Crime in the Courts: Assembly Line Justice,* Vol. 2, No. 3, May, 1970, The Washington Monthly, page 26. The article is excerpted from a book, tentatively entitled *Justice Denied: The Case for Reform of the Courts,* to be published by Praeger Publishers, Inc., early in 1971.

[3] *McMann v. Richardson* (May 4, 1970), 397 U. S. 759, 90 Sup. Ct. 1441, 25 L. Ed. 2d 763; *Parker v. North Carolina* (May 4, 1970), 397 U. S. 790, 90 Sup. Ct. 1458, 25 L. Ed. 2d 785; *Brady v. United States* (May 4, 1970), 397 U. S. 742, 90 Sup. Ct. 1463, 25 L. Ed. 2d 747.

[4] "We decline to hold, however, that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." *Brady v. United States, supra.*

[5] "The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the state's case *or the likely penalties attached to alternative courses of action.*" (Emphasis supplied.) *Brady v. United States, supra.*

nation's highest judicial tribunal made clear that even an inaccurate assessment of the admissibility of defendant's confession would not be an error sufficient to entitle the defendant to disavow his admission in open court that he committed the offense with which he was charged.[6]

Clearly, if it ever was, it no longer is a requirement that ". . . all advice offered by the defendant's lawyer withstand retrospective examination in a postconviction hearing." [7] So the writer would hold that, even if defendant's counsel did not, as he here did, correctly inform the defendant of when he might hope to get out on parole, such inaccurate advice would not entitle the defendant to withdraw his voluntary admission in open court that he committed the crime with which he was charged. Departmental rules and regulations governing inmates of state penal institutions are often changed and often complicated in application to an individual situation. Precise knowledge of all present agency regulations in this field is not to be included within the range of required competence of attorneys in criminal cases. Additionally, such collateral matters ought not be made a part of the negotiable issues at the bargaining table when so-called "plea agreements" are reached.

Here the defendant, with his attorney by his side, voluntarily entered in the court record his admission that he had committed the crimes with which he was

---

[6] ". . . even if Parker's counsel was wrong in his assessment of Parker's confession, it does not follow that his error was sufficient to render the plea unintelligent and entitle Parker to disavow his admission in open court that he committed the offense with which he was charged. . . . we think the advice he received was well within the range of competence required of attorneys representing defendants in criminal cases. Parker's plea of guilty was an intelligent plea not open to attack on the grounds that counsel misjudged the admissibility of Parker's confession." *Parker v. North Carolina, supra.*

[7] *McMann v. Richardson, supra.*

charged. That he then thought he could apply for parole in two years rather than four is a collateral and peripheral factor that does not erase or wipe out his admission of guilt. At least it ought not, if the trial of a criminal case is in fact a search for truth.