YURK and wife, Respondents, v. PRUDENTIAL INSURANCE COMPANY OF AMERICA, Appellant.*

*No. 165. Argued April 2, 1974.—Decided June 28, 1974.*
(Also reported in 219 N. W. 2d 561.)

*Motion for rehearing denied, with costs, on October 1, 1974.

. . .

236

For the appellant there were briefs by *William A. Stearns* and *Quarles, Herriott, Clemons, Teschner & Noelke,* all of Milwaukee, and oral argument by *Mr. Stearns.*

For the respondents there was a brief by *David Rabinovitz* and *Rabinovitz & Sonnenburg,* all of Sheboygan, and oral argument by *David Rabinovitz.*

HANLEY, J. Two issues are presented on this appeal:

1. Was there credible evidence to support the trial court's finding that the misstatements of fact concerning the applicant's mental illness contained in the application were inserted by insurer's agent?

2. Is the evidence sufficient to support the trial court's finding that the defendant's agent misrepresented the law in obtaining a release from plaintiffs?

*Sufficiency of the evidence.*

The trial court found that the evidence was insufficient to prove that the insured misrepresented the facts as to his previous confinement as a result of mental disorders. Rather, the trial court found that the insurance agent unilaterally answered Questions 12 through 18 and that

the insurance agent, without requesting any information as to Question 12 (b), answered it in the negative.

"Have you ever been treated for . . .
"(b) nervous or mental disorder . . ."

The evidence at trial consisted basically in a conflict of testimony between Mrs. Yurk, the insured's mother, and Mr. Gordon Bau, the agent. Mr. Bau testified that all the information in the application was supplied to him by the insured and that the application was signed in his presence by the insured. He stated that the information in Question 19 concerning the insured's hospitalization for a tonsillectomy was given as a supplement to the insured's "yes" answer to Question 10 (b). Mr. Bau further stated that the information concerning the insured's physical examination prior to joining the army supplemented the "yes" answer to Question 11. He stated that he asked Question 12 (b) of the insured (relating to a history of mental illness) and received a "no" answer.

Mrs. Yurk testified she was present when Mr. Bau took the application from James. She stated that she did not hear everything that was said between them; that she heard James mention his tonsillectomy; that she did not hear Mr. Bau ask Questions 12 through 18 but she heard everything they were saying.

On cross-examination, Mrs. Yurk asserted that she had heard everything that was said; she also testified that she heard everything they were saying.

At her deposition prior to trial, Mrs. Yurk testified that she recalled just that Mr. Bau came to their home and asked James about life insurance; that she was present in the house; and that she did not listen to the conversation, that she just knew that they were talking; and that she did not know what they were talking about. She repudiated this testimony at trial.

The trial court concluded that agent Bau after being informed of the fact in Question 11 that the insured had recently been examined by a United States Army physician prior to his enlistment into the military, unilaterally answered Question 12 (b) in the negative. This conclusion is not based on any evidence in the record from which such an inference could be drawn. However, the trial court's finding as to Question 12 (b) is supported by Mrs. Yurk's testimony. The defendant insurance company contends that since Question 10 (b) was answered by the insured

"10.  Have you ever . . .
"(b)  been a patient in or advised to enter a hospital . . ."

and since the insured did not disclose his confinement in state mental hospitals for a year, that the insured misrepresented facts material to a determination of insurability.

As to Question 10 (b) the trial court simply ignored the uncontested fact that the question was asked and falsely answered by the insured. On part 2 of the application the insured disclosed only that he had been hospitalized for one day in 1951 (at age seven) for a tonsillectomy. In response to the same question, the insured failed to disclose that he had been hospitalized for one month (at age fourteen) and then for almost one year in 1958–59 (at age fourteen–fifteen) for mental illness.

It cannot be doubted that Question 10 (b) concerning prior hospitalization was asked because the face of the application (Question 19) shows the purported complete detail of the answer, information which could only come from the insured.

We think the trial court's finding that the misstatements of fact concerning the applicant's mental illness

contained in the application were inserted by insurer's agent is not supported by the credible evidence.

This case is controlled by sec. 209.06 (1), Stats.,[1] which has been interpreted to mean that there are three alternative grounds for voiding such a policy:

"(1) If the statement was false and made with intent to deceive; (2) if the statement increased the risk; or (3) if the statement contributed to the loss." *Polar Mfg. Co. v. Integrity Mut. Ins. Co.* (1959), 7 Wis. 2d 443, 447, 96 N. W. 2d 822.

In the case at bar there is no contention that insured's statements contributed to the loss.

We are satisfied that the failure of the insured to disclose his hospitalizations in November, 1958, to December 17, 1958, and December 29, 1958, to November 4, 1959, relating to "chronic undifferentiated psychotic reaction" was a misrepresentation which under the evidence of this case, as a matter of law, increased the risk and therefore voided the insurance policy.

In *Delaney v. Prudential Ins. Co.* (1966), 29 Wis. 2d 345, 139 N. W. 2d 48, this court held that the failure of the respondent to disclose her hospitalizations was a misrepresentation that increased the risk and voided the policy.

There is sufficient evidence in the record for this court to conclude, as a matter of law, the risk was increased for failure to disclose the previous hospitalization.

The only testimony on the subject was provided by George Null, senior underwriting consultant for Pruden-

[1] "No oral or written statement, representation or warranty made by the insured or in his behalf in the negotiation of a contract of insurance shall be deemed material or defeat or avoid the policy, unless such statement, representation or warranty was false and made with intent to deceive, or unless the matter misrepresented or made a warranty increased the risk or contributed to the loss."

tial Insurance Company. He testified that if the diagnosis of "chronic undifferentiated psychotic reaction" made at Wisconsin Diagnostic Center and of "schizophrenic reaction, type undetermined" at Winnebago State Hospital had been disclosed, Prudential would have rejected the risk altogether.

Since we hold the policy is void, we do not reach the remaining issue concerning the validity of the release.

*By the Court.*—Judgment reversed.