ANDERSON, Plaintiff in error, v. STATE, Defendant
in error.

*No. 75–686–CR.  Submitted on briefs February 2, 1977.—
Decided March 15, 1977.*
(Also reported in 251 N. W. 2d 768.)

For the plaintiff in error the cause was submitted on the brief of *Howard B. Eisenberg,* state public defender, and *Melvin F. Greenberg,* assistant state public defender.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *David J. Becker,* assistant attorney general.

ROBERT W. HANSEN, J.   Defendant claims the trial judge abused his judicial discretion in sentencing the defendant to prison instead of placing him on probation. Every case has its frame of reference.  Here that backdrop is the sentencing phase of the judicial process in criminal cases.

It is thus necessary to begin, even though we repeat what has been said before by this court—and very recently so—with the wide discretion given trial judges in this state in determining an appropriate sentence in a particular case.  As to appellate review of trial court sentences, our court has made clear that " '. . . all an appellate court can ask of a trial judge is that he state the facts on which he predicates his judgment, and that he give the reasons for his conclusion. . . . If there is

evidence that discretion was properly exercised, and the sentence imposed was the product of that discretion, the trial judge fully complies with the standard.' "[1]

As to such appellate review, we have made clear that the trial court's sentence would be upheld if the record showed a process of reasoning based on legally relevant factors.[2] While other factors can be considered,[3] the primary factors to be considered in determining an appropriate sentence or disposition are the gravity of the offense, the character of the offender, and the need for the protection of the public.[4]

It has been made abundantly clear that the ". . . weight which is to be attributed to each factor is a determination which appears to be particularly within the wide discretion of the sentencing judge."[5] Thus our court has upheld the imposition of a maximum sentence for a first offender solely on the basis of the gravity of the offense involved, i.e., a fire bombing.[6] Likewise,

---

[1] *Bastian v. State*, 54 Wis.2d 240, 248, 194 N.W.2d 687 (1972), quoting *McCleary v. State*, 49 Wis.2d 263, 281, 182 N.W.2d 512 (1971).

[2] *Id.* at 248.

[3] *See, e.g., State v. Killory*, 73 Wis.2d 400, 408, 243 N.W.2d 475 (1976), holding that factors relevant to sentencing determinations include: ". . . the defendant's personality, character and social traits, the results of a presentence investigation, the vicious or aggravated nature of the crime, the degree of defendant's culpability, the defendant's demeanor at trial, the defendant's age, educational background and employment record, the defendant's remorse, repentance and cooperativeness, the defendant's need for close rehabilitative control, and the rights of the public." Citing *State v. Tew*, 54 Wis.2d 361, 367, 368, 195 N.W.2d 615 (1972).

[4] *Rosado v. State*, 70 Wis.2d 280, 291, 234 N.W.2d 69 (1975), citing *McCleary v. State, supra*, n. 1, at 274–276.

[5] *Ocanas v. State*, 70 Wis.2d 179, 185, 233 N.W.2d 457 (1975).

[6] *Cheney v. State*, 44 Wis.2d 454, 468, 469, 171 N.W.2d 339, 174 N.W.2d 1 (1969), affirming a maximum sentence of a first of-

our court has affirmed the lengthy incarceration of one convicted of indecent liberties with a child solely because such extended incarceration would protect society.[7]

The state public defender, on behalf of the defendant, does not challenge these and other decisions of this court which make clear that sentencing is a discretionary judicial act.[8] Nor does defense counsel contest that this court will remand for resentencing or modify the sentence imposed only when it appears that no discretion was exercised in the imposition of sentence or the discretion was exercised without the underpinnings of an explained judicial reasoning process.[9]

Instead defendant sees a narrower range of trial court discretion applying to the rejection of probation as a sentencing alternative. In support of this position defendant cites the adoption by this court of criteria or standards relating to the granting of probation in *Bastian v. State*.[10] These criteria, constituting sec. 1.3 of the American Bar Association *Standards Relating to Probation*, provide that probation should be the sentence unless the sentencing court finds that: "(i) confinement is necessary to protect the public from further criminal activity by the offender; or (ii) the offender is in need

---

fender on the charge of fire bombing. Of the *Cheney* result, this court stated in *Bastian v. State, supra*, n. 1, at 246: "We [in *Cheney*] concluded that the seriousness of the offense was a proper criterion in imposing a maximum sentence."

[7] *Bastian v. State, supra*, n. 1, at 247, affirming the sentence of extended incarceration, seven years, for a first offender convicted of indecent liberties with a minor, because the trial judge concluded that ". . . it was necessary to protect the public from further criminal activity of this nature by George Bastian."

[8] *McCleary v. State, supra*, n. 1, at 277, quoting *State v. Hutnik*, 39 Wis.2d 754, 764, 159 N.W.2d 733 (1968): "'. . . there should be evidence in the record that discretion was in fact exercised and the basis of that exercise of discretion should be set forth.'"

[9] *Id.* at 278.

[10] *Bastian v. State, supra*, n. 1, at 247, 248.

of correctional treatment which can most effectively be provided if he is confined; or (iii) it would unduly depreciate the seriousness of the offense if a sentence of probation were imposed."[11]

We do not see the criteria relating to granting or rejecting probation as a sentencing alternative as in any way affecting, much less changing or limiting, the decisions before and since this court adopted sec. 1.3 of the ABA standards in *Bastian* in 1972.[12] Rejection of probation is a necessary predicate to a determination that incarceration is required in a particular case.

It would not make sense to have one standard for the exercise of discretion as to granting of probation and another and different standard for the exercise of judicial discretion as to the appropriate period of incarceration. These are not two sides of a single coin. They are part of the same side of the same coin—the determination of the appropriate disposition.

In point of fact we see the threefold test of sec. 1.3 of the ABA criteria relating to probation as exactly the same as the threefold approach to sentencing recently reiterated in *Rosado* in 1975.[13] To paraphrase the sec. 1.3 standard, the reference is to: (1) Protection of the public; (2) need of correctional treatment; and (3) seriousness of the offense. In *Rosado*, the primary factors are held to be: (1) Gravity of the offense; (2) character of the defendant; and (3) protection of society. The difference is in the words used and the order listed, but there is no difference as to substance or content.

In both there is a single approach or rule which is to require the trial judge to consider the three enumerated

[11] American Bar Association *Standards Relating to Probation,* sec. 1.3 (Approved Draft, 1970).

[12] *See, e.g.,* cases cited in footnotes 1–8, *supra.*

[13] *Rosado v. State, supra,* n. 4, at 291. As recent as this term this threefold test was again endorsed by this court. *See: Cunningham v. State,* 76 Wis.2d 277, 251 N.W.2d 65 (1977).

factors. The weight to be attributed any of these factors is for the trial court to determine in the exercise of its judicial discretion. Both rejection of probation and imposition of a particular sentence can be based on any one or more of the three primary factors. While an element of weighing or balancing is involved, this is for the trial court to perform. Such determination will not be reweighed or rebalanced by this court, since ". . . weight which is to be attributed to each factor is a determination which appears to be particularly within the wide discretion of the sentencing judge."[14] This is as true in the consideration of the probation alternative as it is in the selection of an appropriate period of incarceration.

In both determinations the trial court here clearly considered all three primary factors. As to the gravity of the offense, the trial court found the offense committed involved force and violence—spraying mace in the victim's eyes, and expressed grave concern for the trauma experienced by the elderly victim of the crime. The trial court found the defendant made a deliberate choice to participate in the robbery and that defendant furnished the mace spray, a steel club and gloves for the commission of the crime.[15]

As to defendant's character and need for correctional treatment, the trial court was informed and relied on the fact that defendant was on probation for criminal damage to property. Defendant had also been committed

---

[14] *Ocanas v. State, supra,* n. 5, at 185.

[15] The trial judge relied on a finding in the presentence report: " 'While fishing with his stepfather along Root River, two friends approached Bruce and told him they knew where a lady was living who they could rob. Bruce's stepfather told him not to go, however, Bruce agreed to meet the other two males at about 9:15 the night of June 7, 1975. Bruce then went home to get the spray, a steel club and gloves and the three of them went over to Knapp School playground where they sat and smoked marijuana.' "

as a juvenile to an institution in Prairie du Chien for operating a vehicle without the owner's consent and for assault. The trial court found that defendant needed a "strict, structured environment not only for himself, but society in general."[16]

As to the need to protect society, the trial judge concluded that he was unable to find that defendant would not commit another crime, that the type of burglary and robbery here involved was an "offense society could not tolerate,"[17] and that confinement was necessary to protect the public.

While any one of these factors would have been sufficient, the others were given consideration. The trial court here clearly rejected probation and fixed the sentence, giving weight as well as consideration to all three factors. We thus find no fault in the reasons stated and in the exercise of judicial discretion which resulted in the sentences here imposed—three years and eight years —to run concurrently.

---

[16] The trial judge holding: ". . . I don't think society should go on trial, as far as Bruce Anderson is concerned, whether that hostility should go unbridled, without any restriction on him. His behavior, his conduct is such, that the court feels that he needs a strict, structured environment not only for himself, but for society."

[17] The trial court concluded: "Now it was stated that the victim . . . didn't suffer from the spraying of her eyes for any long duration, but this was an offense involving force. Society does not tolerate it, I don't think anybody should tolerate it. Now here is what is in the victim's statement, in the report made to the court by the probation department:

" '[Victim] said that she was very shook up by the incident and still has had nightmares about the involvement.'

"Now that is a psychological reaction that is hard to overcome. There would be nothing in any medical report that would demonstrate her mental anguish of this offense."

As no more than postscript, we note the lower court elected not to follow the recommendation of the social investigator who conducted the presentence investigation. The trial judge was not required to do so.[18] Likewise, the sentencing judge was not required to accept the defendant's statement that during the assault on the elderly victim he had restrained an accomplice from inflicting additional physical harm upon the victim. Credibility always is for the trier of fact to decide.

Additionally, there was some dispute below as to whether defendant or one of his accomplices had sprayed the victim with mace. We agree with the trial judge that it was irrelevant which individual had actually sprayed the victim.[19] The trial judge commented as follows:

". . . whether one hit her, two others went along with the same crime and received the proceeds. I don't think it diminishes his responsibility."

In response to defendant's allegation of restraint, the trial judge stated: "How can you reconcile the fact that he [defendant] got the pipe at home, got the mace, he got the gloves and went to the house and met those people?" The trial judge could not reconcile that fact and, in the exercise of sound judicial discretion, he was not obliged to.

*By the Court.*—Judgment and order affirmed.

[18] *See: State v. Killory, supra,* n. 3, at 409, this court holding: "Although the presentence report did not recommend total incarceration, such report is not binding on the sentencing court." Citing *Ocanas v. State, supra,* p. 5, at 188.

[19] That is because defendant was convicted of being party to the crime of robbery.