LINSE, Plaintiff in error, v. STATE, Defendant in error.

Supreme Court

*No. 77-350-CR. Submitted on briefs December 5, 1979.—Decided January 8, 1980.*
(Also reported in 286 N.W.2d 554.)

164

For the plaintiff in error the cause was submitted on the brief of *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Nadim Sahar,* assistant attorney general.

HEFFERNAN, J.   The sole question raised on appeal is whether the trial court erred by denying the defendant's request for a special instruction cautioning the jury to subject the testimony of the state's principal witness to careful scrutiny because he had been granted immunity to testify. The proffered instruction was modeled on the standard instruction for accomplice testimony and warned that it is ordinarily unsafe to convict or base a verdict on the uncorroborated testimony of a witness granted immunity. We conclude that the failure to give that instruction was not error and that the usual admonition to a jury in respect to the credibility of witnesses was sufficient under the facts of this case.  We affirm.

Linse was charged and found guilty by a jury of causing property damage by means of explosives contrary to sec. 943.02 (1) (c), Stats. He was sentenced to a term not to exceed four and one-half years. The appeal is from the judgment of conviction and an order denying the usual motions for post-trial relief.

On September 14, 1975, at about 11 P.M., the Eau Claire police radio tower was damaged by an explosion. The only evidence directly connecting Linse with the crime was the testimony of Dennis Knudtson, who was granted immunity from prosecution.

Knudtson testified that on the night of the explosion he had been in a tavern drinking with Linse. At approximately 10 P.M., Knudtson drove the defendant to a destination near Menominie Street specified by the defendant. There the defendant left the car and returned about ten minutes later with a box or bag about the size of a small bag of sugar. The defendant also had in his possession an object that looked to Knudtson like a fuse. Although Knudtson asked the defendant what he had, the defendant did not answer. The defendant directed Knudtson to drive to Mount Tom. Linse got out of the car at Mount Tom, and Knudtson saw him go "back in the weeds . . . towards the fence," squat down with the box, and light a match or lighter. The defendant returned without the box and said, "Let's go. We got a few minutes." Knudtson heard a loud explosion shortly after they drove away.

Two young students parked near Mount Tom observed a car stop near the radio tower for several minutes, during which time a person emerged from the passenger door, went toward the tower, and then quickly returned to the car. The explosion followed shortly after the car left.

There was also evidence that the defendant retrieved a small box stored at a friend's house on Menominie Street late one evening in September. Although the witness

could not remember the exact date the defendant picked up the box, she did remember seeing him get into the passenger side of a car with it and drive off.

Additionally, an employee of a Colorado mining company testified that Linse had worked for the company for about a month prior to the date of the explosion. An expert witness testified that sample fragments from the blast site showed the presence of commercial dynamite vapors.

Knudtson's grant of immunity was expressly pointed out to the jury on direct examination, cross-examination, and redirect. Defense counsel also brought out on cross-examination that Knudtson had been convicted of two prior crimes. Nothing in the record indicates that any constraints were placed upon defense counsel in the course of the cross-examination. In his closing arguments, defense counsel again emphasized that Knudtson had been granted immunity and pointed out that Knudtson, as one who was originally charged, had "a very big interest" in the outcome of the trial. Because the defendant did not testify, the only evidence concerning Knudtson's participation came from Knudtson's testimony that he did not know what Linse was doing until after the explosion took place.

At the close of testimony, defense counsel requested the court to instruct the jury that Knudtson's testimony should be carefully scrutinized and weighed, like that of an accomplice, because he had been granted immunity in order to testify. Defense counsel proffered an instruction modeled on Wisconsin Jury Instructions–Criminal, Part I, 245, relating to the testimony of accomplices. The requested instruction provided:

"One Dennis K. Knudtson has testified on behalf of the State and was previously charged as a party to the crime of damage of property by means of explosives. He

has been granted full immunity except prosecution for perjury so that he would testify in this case.

"You are instructed that testimony of this nature is competent evidence in a criminal case upon which to base a verdict of guilty, providing it is of such a character, taken in conjunction with all the other evidence in the case, as to satisfy you of the guilt of the Defendant in this case beyond a reasonable doubt. But ordinarily, it is unsafe to convict upon the uncorroborated testimony of one who has been granted full immunity. Therefore, you should examine such evidence with the utmost care and caution, scrutinize it closely, and weigh it in light of all the attending circumstances as shown by the whole evidence. You should not base a verdict of guilty upon it alone. Unless after such scrutiny and consideration it satisfies you of the guilt of the Defendant beyond a reasonable doubt.

"It is the rule that such testimony is to be carefully examined and scrutinized and is to be given only such weight and credit as under all the circumstances you believe it fairly entitled to receive."

The court refused to use the instruction after discussing the matter at length with counsel. The court pointed out that the grant of immunity had repeatedly been brought to the jury's attention through questioning of both counsel. The court concluded that the proffered instruction was erroneous as a matter of law because it stated that a guilty verdict could not be sustained on the uncorroborated testimony of a witness granted immunity. The court reasoned that, although the special instruction (Wis J I—Criminal, Part I, 245) would be appropriate if the witness were an accomplice, the record was totally devoid of evidence showing that Knudtson was an accomplice. The court pointed out to counsel that the grant of immunity would be relevant on the general credibility of a witness and could be emphasized in defense counsel's closing argument to the jury.

In lieu of using the defendant's modified accomplice instruction, the court instructed the jury using the stan-

dard credibility-of-witnesses instruction[1] which, among other things, instructs the jury to consider the witnesses' "interests or lack of interest in the result . . . [their] bias or prejudice . . . [and their] possible motives for falsifying . . . ." The jury subsequently returned a verdict finding the defendant guilty as charged.

This court recently held in *Loveday v. State*, 74 Wis.2d 503, 247 N.W.2d 116 (1976), that a special instruction —containing the admonitions appropriate in respect to an accomplice—need not be given because a witness has been granted immunity. We said:

"The jury, however, was aware of the immunity grant and was given the standard instruction on the credibility of witnesses. This standard instruction sufficiently allowed the jury to properly evaluate the credibility of [the witness'] testimony." *Id.* at 520–21.

The public defender on this appeal ignores the recent precedent of *Loveday* and predicates his argument upon two federal cases: *On Lee v. United States*, 343 U.S. 747

---

[1] "[I]t is the duty of the jury to scrutinize and weigh the evidence of the witnesses and to determine the effect of the evidence as a whole. You are the sole judges of the credibility of the several witnesses and of the weight and credit to be given to their testimony. In determining the weight and credit you should give to the testimony of each witness, you should consider: his or her interests or lack of interest in the result of the trial, his or her conduct and demeanor on the witness stand, his or her bias or prejudice, if any has been shown, the clearness or lack of clearness of each witnesses' recollections, the opportunity for observing and knowing the matters and things testified to by each witness, and the reasonableness of the testimony. You should also take into consideration the apparent intelligence of each witness, the possible motives for falsifying, and all other facts and circumstances appearing on the trial which tend either to support or to discredit each witnesses' testimony, and then to give to the testimony of each witness such weight and credit as you believe it fairly entitled to receive." (Substantially Wis J I—Criminal, Part I, 300).

(1952), and *United States v. Leonard,* 494 F.2d 955 (D.C. Cir. 1974). Were these cases in point or persuasive, we might reconsider the rule stated in *Loveday.* The two cases relied upon do not, however, persuade us that the present Wisconsin rule in respect to witnesses granted immunity is inappropriate.

*On Lee* involved evidence derived from a paid informer who did not testify at trial. The informer was equipped with a radio transmitting device, and the incriminating conversation between the informer and the defendant was transmitted to a receiver in the possession of a nearby federal agent. The principal issue in that case was whether, in view of the method by which the incriminating statements were obtained, the testimony was admissible. The court concluded that the information was admissible; and Justice Jackson, speaking for the court, said:

"The trend of the law in recent years has been to turn away from rigid rules of incompetence, in favor of admitting testimony and allowing the trier of fact to judge the weight to be given it." (P. 757)

Justice Jackson further stated:

"The use of informers, accessories, accomplices, false friends, or any of the other betrayals which are 'dirty business' may raise serious questions of credibility. To the extent that they do, a defendant is entitled to broad latitude to probe credibility by cross-examination and to have the issues submitted to the jury with careful instructions. . . . We think the administration of justice is better served if stratagems such as we have here are regarded as raising, not questions of law, but issues of credibility." (Pp. 757–58)

In the subsequent case of *United States v. Leonard, supra,* the Court of Appeals adopted the language of *On Lee,* stating:

"Like the paid informer who has a pecuniary interest in testifying, or an accomplice who has a penal interest

in shifting guilt to his cohort, a witness who has been granted immunity has an interest in incriminating another to save himself." (P. 961)

The *Leonard* court failed to demonstrate that the analogy between paid informers and persons granted immunity has a rational basis and none is readily apparent to us. Aside from the questionable analogy between paid informers and persons granted immunity, *Leonard* is inapposite to the present case for several reasons. For instance, the *Leonard* court emphasized at least three times in the opinion that two of the witnesses who testified against Leonard were accomplices testifying under a grant of immunity. The court pointed out that, although it would have been error to refuse an accomplice instruction on these facts, that instruction had not been requested. However, a request for a special instruction in respect to immune witnesses had been made, and there was an objection to its omission. The court stated that it was error to omit the requested immunity instruction, making it clear that both witnesses "were obviously accomplices." (P. 958) It is also noteworthy that the Court of Appeals stated in *Leonard* that, on retrial, the defendant was not entitled to a separate instruction cautioning the jury about reliance on the testimony of a witness who had been granted immunity:

"Rather, the district court should merge both requests into a single instruction that the testimony of Jones and Hughes is to be scrutinized with caution because they are accomplices and because they have been granted immunity." (P. 962)

Thus, it rings through the *Leonard* opinion that the real error at trial, although not properly raised by objection, was the failure to give the accomplice instruction and not the omission of a special immune-witness instruction. The holding of *Leonard* does not persuade us that the immune-witness instruction should be given in all cases where the witnesses are not also accomplices.

The facts in the instant case are far different from those in *Leonard*. The trial court, in discussing the instructions with counsel, carefully pointed out that there was no evidence to show that Knudtson was an accomplice nor were there any facts to justify charging, or even characterizing him as a party to the crime. *Leonard* is simply not analogous to the instant case.

Moreover, we are satisfied that the admonitions of *On Lee* were fully complied with in the instant case. There was no attempt to limit defense counsel's latitude to probe credibility by cross-examination in respect to the grant of immunity. Defense counsel was specifically permitted by the court to argue to the jury the possible effect that the grant of immunity would have upon Knudtson's credibility.

We are satisfied that the general instruction in respect to credibility of witnesses, coupled with the unlimited right of cross-examination and argument, adequately protected the rights of the defendant.[2]

Even if we were to assume, despite the clear indication in the record to the contrary, that Knudtson was an accomplice, the failure to give an accomplice instruction is not reversible error where the testimony of the accomplice is corroborated. *State v. Shears*, 68 Wis.2d 217, 241, 229 N.W.2d 103 (1975); *Bizzle v. State*, 65 Wis.2d 730, 223 N.W.2d 577 (1974); *Cheney v. State*, 44 Wis.2d 454, 467, 171 N.W.2d 339, 174 N.W.2d 1 (1969). Although we have held that, given proper instructions, the uncorroborated testimony of an accomplice is sufficient to convict if the finder of fact finds the testimony credible, *Kutchera v. State*, 69 Wis.2d 534, 230 N.W.2d 750 (1975), ac-

[2] *See, United States ex rel. Swimley v. Nesbitt*, 608 F.2d 1130 (7th Cir. 1979), holding that the omission of special cautionary instructions in respect to immunized witnesses and accomplices did not violate the defendant's due-process right to a fair trial.

complice testimony should be weighed with greater caution than the testimony of other witnesses. *Penister v. State,* 74 Wis.2d 94, 103, 246 N.W.2d 115 (1976). Neither logic, reason, nor precedent require a special instruction merely because the witness has been granted immunity.

*Cheney v. State, supra,* and *Bizzle v. State, supra,* squarely refute the defendant's argument in this case. Both decisions hold that it is error to deny a request for an accomplice instruction only where the accomplice's testimony is totally uncorroborated. In *Cheney,* the state's principal witness was an accomplice granted immunity to testify regarding the defendant's violation of sec. 943.02(1)(c), Stats., the same statute involved in the present case. The court found sufficient corroboration where bomb fragments were found in the location where the accomplice testified the defendant placed the bomb. 44 Wis.2d at 468. In *Bizzle,* the court found sufficient corroboration where shotgun shells were found in the location the accomplice, who had been granted immunity to testify, stated the defendant fired the shotgun. 65 Wis.2d 734.

Were Knudtson an accomplice, his testimony was substantially corroborated by the testimony of the two persons parked near Mount Tom at the time of the explosion, the testimony of a householder from whom the defendant picked up a package, and the testimony of the mining company representative, who indicated that the defendant had worked for the mining company, from which the jury could reasonably infer that the defendant had access to, and knowledge about, explosives. There was also testimony that the blast was caused by commercial dynamite. In light of the corroborating evidence, the failure to give an accomplice instruction would not have been error even if the witness were an accomplice.

*By the Court.*—Judgment and order affirmed.