STATE EX REL. DRANKOVICH; Petitioner, vs. MURPHY, Warden, Respondent.

*October 18, 1945—April 12, 1946.*

C. G. *Mathys* of Madison, for the petitioner.

For the respondent there were briefs by the *Attorney General* and *William A. Platz,* assistant attorney general, and oral argument by *Mr. Platz.*

FOWLER, J.  Victor Drankovich who upon his plea of guilty was sentenced to state's prison for life on January 5, 1935, for the murder of Stanley Skibinski, filed with the clerk of this court a petition for a writ of *habeas corpus.*  The petition laid several grounds for issuance of the writ, one of which was that the petitioner did not have the benefit and was not advised of his right to counsel at public expense.  Upon this petition Mr. Chief Justice ROSENBERRY signed an order requiring the warden of the prison to show cause before the court at a set time why the writ should not be granted and directing that the order be timely served on the warden and the attorney general.  The petitioner not being represented by counsel, the court appointed Clifford G. Mathys, an attorney of this court, to appear for and represent him at the hearing.

The matter came duly on for hearing before the court upon the petition, the return of the warden of the prison to the order to show cause, the record of the court proceedings before the circuit court, and affidavits submitted in support of the return. The return of the warden and its supporting documents being in many respects in contradiction of the allegations of the petition, the court referred the case to the Hon. S. E. SMALLEY, formerly judge of the Fifth circuit "to hear, try and determine the issues of fact" with direction to receive and consider all testimony material and relevant to the issue whether strictly

within the pleadings or not, and particularly to make findings of fact of the circumstances under which the plea of guilty was entered and sentence imposed.

The referee made his report and when it came before this court for action thereon it appeared that at the hearing before the referee the district attorney who conducted the proceedings before the circuit court, a stenographer who took notes of an examination of the petitioner by the district attorney, and the wife of the deceased were not examined before the referee and the court of its own motion re-referred the matter for their examination, limiting the examination of the wife of deceased as to the petitioner's ability to speak and understand the English and Polish languages at the time of the proceedings before the circuit court. Such examination having been had, the referee filed a supplemental report confirming in all respects the findings made upon the hearing first had before him.

It is conceded by the attorney general that upon the findings of the referee, if sustained, the judgment and sentence of the circuit court should be reviewed as upon the issuance of a writ of *habeas corpus*. But he strenuously insists that those findings are against the great weight and clear preponderance of the evidence, and submits to the court proposed findings which he considers the court should adopt pursuant to which, if adopted, the writ should be denied.

We are inclined to adopt the view of the attorney general as to several findings of evidentiary facts made by the referee. However, as to a finding of ultimate fact made by the referee bearing upon the point of want of due process for failure of the court to inform the petitioner of his right to counsel at public expense and the failure of the court to appoint such counsel we consider it must be sustained. That finding is that the petitioner did not "intelligently waive" the right to be represented by counsel.

It was held in *Powell v. Alabama*, 287 U. S. 45, 71, 53 Sup. Ct. 55, 77 L. Ed. 158, that "in a capital case, where the defendant is unable to employ counsel, and is incapable

adequately of making his own defense because of ignorance, feeble-mindedness, illiteracy, or the like, it is the duty of the court, whether requested or not, to assign counsel for him as a necessary requisite to due process of law." The *Powell Case* involved a conviction of rape by a state court, and was decided about three years before the instant sentence was imposed. Under the rule above quoted we think it was the duty of the trial court to appoint counsel for the petitioner. The referee found that the petitioner was without means to employ counsel, and we consider that under all the circumstances this finding must be sustained. It is true that the petitioner was by no means feeble-minded, but he was, through ignorance of the law and illiteracy, utterly incapable of making his own defense.

It is true that in the *Powell Case, supra,* the defendants had pleaded "not guilty," while the petitioner here had pleaded "guilty." But in *Hawk v. Olson,* 326 U. S. 271, 66 Sup. Ct. 116, 90 L. Ed. 000, decided November 13, 1945, which reviewed a conviction affirmed by the Nebraska supreme court, the rule above quoted was applied, the court saying:

"When the absence of counsel at a trial was urged as ground for a federal writ of *habeas corpus,* we held that in federal courts a felony conviction without benefit of counsel is subject to collateral attack because a violation of the accused's constitutional right to the services of an attorney unless he has intelligently waived that privilege. *Johnson v. Zerbst,* 304 U. S. 458; *Walker v. Johnson,* 312 U. S. 275, 286."

The *Johnson Case,* next above cited, was decided in 1938, and the instant petitioner was sentenced in 1935, but it is quite apparent from the *Powell* decision, *supra,* that the rule above quoted from that case would be applied to convictions by state courts where a plea of "guilty" is involved as well as when the plea is "not guilty."

Our conclusion that the trial judge should have appointed counsel for the petitioner rests principally on the following

facts, although other facts in evidence also have bearing: The homicide was committed on December 26, 1934, and the petitioner was arrested on that day or the day following. The petitioner was taken before the court on January 2d, and on arraignment pleaded guilty. The court then asked him the formal question whether he had anything to say why he should not be sentenced and he answered: "I kill him, but I no mean to." The court then of its own motion struck the plea of "guilty" and ordered a plea of "not guilty" to be entered. The petitioner was again brought before the court on January 5th, when the court permitted the plea of "not guilty" to be withdrawn and accepted a plea of "guilty." The situation as to no intent to kill was more apparent on the 5th than on the 2d. The trial judge on the 5th said to the petitioner: "You had made up your mind to kill him" (meaning the deceased). The petitioner answered: "Yes sir. I thought about it before. I changed my mind. I wanted to get what he owed and go away." He also said when before the court on the 5th: "I don't mean to kill [the deceased] that day [of the killing]. I was happy."

It is quite evident that the petitioner did not know that the effect of not having the intent to kill at the time the homicide was committed would reduce the homicide to some degree of homicide less than murder in the first degree, and reduce the statutory life sentence necessarily imposed upon conviction of murder in the first degree. The referee found that the petitioner did not have the means to employ counsel. We think this finding under the circumstances must be sustained, and that the court should under the whole situation have appointed counsel to defend and have refused to accept the plea of "guilty" without the approval of such counsel. The district attorney between January 2d and January 5th had questioned the petitioner and had taken what appeared to be a confession. The petitioner claims he did not understand the contents of the confession and signed it because he was

told to. It appears that the district attorney had from his examination of the petitioner and the wife of the deceased concluded that the petitioner's claim of no intention to kill was false and that under the facts he was guilty of murder in the first degree. During the proceedings before the court on January 5th the district attorney told the court about the confession made by the petitioner between the two hearings although neither the confession nor the transcript of the examination of the petitioner's statements prior to his first appearing before the court were formally introduced in evidence. It is quite apparent that the only difference between the situations on January 2d and January 5th was the statements of the district attorney as to the confession and his own belief that the petitioner was guilty of murder in the first degree, and that the court was influenced thereby to accept the plea of "guilty" on the 5th and impose sentence thereon.

A carefully prepared summary of the federal decisions bearing on the point of want of due process under the constitution of the United States in proceedings before trial courts resulting in conviction and sentence is contained in the petitioner's brief. While we consider that the preceding paragraphs of this opinion rule the instant case and require issuance of the writ of *habeas corpus,* we incorporate this summary herein, considering that it will be helpful to trial courts, district attorneys, and counsel for the defendant in the conduct of criminal trials. The attorney general's brief does not take issue with this summary in any respect. The writer has checked the authorities cited and finds that they support the propositions to which they are cited.

"1. Due process under the Fourteenth amendment requires that a defendant accused of murder be furnished counsel. *White v. Ragen,* 324 U. S. 760, 65 Sup. Ct. 978, 89 L. Ed. 1348; *Powell v. Alabama,* 287 U. S. 45, 53 Sup. Ct. 55, 77 L. Ed. 158.

"2. The duty rests upon the trial judge to protect this right. *Glasser v. United States,* 315 U. S. 60, 71, 62 Sup. Ct. 457,

86 L. Ed. 680; *Evans v. Rives* (D. A. App.), 126 Fed. (2d) 633; *United States v. Steese* (3d Cir.), 144 Fed. (2d) 439.

"3. The trial judge should do this whether requested or not. *Powell v. Alabama, supra; Walker v. Johnston,* 312 U. S. 275, 286, 61 Sup. Ct. 574, 85 L. Ed. 830; *Tomkins v. Missouri,* 323 U. S. 485, 65 Sup. Ct. 370, 89 L. Ed. 407; *White v. Ragen, supra.*

"4. This duty is imperative where the defendant is illiterate, unacquainted with legal proceedings, isolated and away from friends and without funds. *Powell v. Alabama, supra; Johnson v. Zerbst,* 304 U. S. 458, 462, 58 Sup. Ct. 1019, 82 L. Ed. 1461; *Walker v. Johnston, supra; Smith v. O'Grady,* 312 U. S. 329, 334, 61 Sup. Ct. 572, 85 L. Ed. 859.

"5. There should be a record of the proceedings. *Johnson v. Zerbst, supra; Widmer v. Johnston* (9th Cir.), 136 Fed. (2d) 416; *United States v. Steese, supra.*

"6. It should not be presumed that accused knew he had the right to counsel and voluntarily rejected it. *Glasser v. United States, supra; Johnson v. Zerbst, supra.*

"7. A plea of guilty is not a waiver of the constitutional right. *Waley v. Johnston,* 316 U. S. 101, 104, 62 Sup. Ct. 964, 86 L. Ed. 1302; *Walker v. Johnston, supra; Williams v. Kaiser,* 323 U. S. 471, 65 Sup. Ct. 363, 89 L. Ed. 398; *House v. Mayo,* 324 U. S. 42, 65 Sup. Ct. 517, 89 L. Ed. 739; *Rice v. Olson,* 324 U. S. 786, 65 Sup. Ct. 989, 89 L. Ed. 1367; *Robinson v. Johnston* (9th Cir.), 118 Fed. (2d) 998; *Evans v. Rives, supra; Michener v. Johnston* (9th Cir.), 141 Fed. (2d) 171, 174.

"8. The court should not indulge in speculation as to whether the defendant was prejudiced by not having counsel. *Glasser v. United States, supra.*"

We think the following facts should here be stated: When the petitioner is remanded to the custody of the sheriff of Marinette county pursuant to the mandate of this court, he may be re-arraigned and held for trial if he pleads "not guilty." If he is tried on the present information he may be convicted of murder in the first degree. If so convicted the trial court would have no discretion but to sentence him to state's prison for life, although the prisoner has served eleven years of his

sentence and shortly will be entitled to apply for parole. The trial court upon resentence could not take the fact of his eleven years' imprisonment into consideration. The petitioner then would have to commence another life sentence. Because of the peculiar circumstances we have no means of avoiding such result. We can only point out that if he should be prosecuted for and be convicted of murder in the first degree the matter of how much of his term he should justly serve will be a matter for the consideration of the governor in case he applies for pardon.

It may be further stated that at the time petitioner filed his petition, he was fully advised by the warden of the state's prison and by his counsel as to the possible consequences of the granting of the writ applied for.

*By the Court.*—The petitioner having had such hearing pursuant to the order to show cause as he would have had had the writ of *habeas corpus* been issued, it is considered that the issuance of the writ be omitted, and it is adjudged that the judgment and sentence of the circuit court is vacated and that the warden of the state's prison deliver the petitioner to the sheriff of Marinette county to be held by him for further proceedings according to law.

RECTOR, J., took no part.

FAIRCHILD, J. (*dissenting*). In my study of the case, I cannot reach the conclusion that the petitioner was not sufficiently advised of his rights by what was done in his behalf by the trial judge. The court refused to accept his plea of guilty and appointed an interpreter to confer with him who advised with him. Thereafter defendant made a confession to the district attorney which amply warranted the charge of murder in the first degree. The evidence satisfies me that he understood not only the nature of the crime he committed but the consequences of his waiver of a trial and of his plead-

ing guilty. I am convinced that the findings of the referee which may be styled controlling are against the great weight of the evidence.

I am authorized to state that Mr. Justice BARLOW concurs in this opinion.