STATE, Plaintiff in error, v. WILSON, Defendant in error.

*No. 75–425–CR. Argued November 4, 1976.—*
*Decided March 29, 1977.*
(Also reported in 252 N. W. 2d 64.)

For the plaintiff in error the cause was argued by *Patricia S. Curley,* assistant district attorney, with whom on the brief were *Bronson C. La Follette,* attorney general, and *E. Michael McCann,* district attorney for Milwaukee County.

For the defendant in error there was a brief by *Theodore J. Hodan, Richard J. Podell* and *Podell, Hodan & Podell, S. C.* and oral argument by *Theodore J. Hodan* and *Richard J. Podell,* all of Milwaukee.

DAY, J. The question is whether a sentence of life imprisonment, following conviction of first-degree murder, may be stayed and the defendant placed on probation.

On March 20, 1975 Mary Levis Wilson was convicted in a trial to the court without a jury of first-degree murder contrary to Sec. 940.01(1) Stats.[1] in the shooting death of her husband. A sentence of life imprisonment was imposed on April 21, 1975. Execution of the

---

[1] "940.01 *First-degree murder.* (1) Whoever causes the death of another human being with intent to kill that person or another shall be sentenced to life imprisonment."

sentence was stayed and Mrs. Wilson was placed on probation for fifteen years. Mrs. Wilson was also adjudged guilty of arson contrary to sec. 943.02. The state has not appealed from nor requested a writ of error directed to the judgment of conviction for arson. That conviction is not before us.

The state seeks review of the order staying execution of the sentence and placing Mrs. Wilson on probation and also review of a subsequent order of the court dated July 9, 1975 denying the state's motion of June 6, 1975 for an order vacating that portion of the judgment which stayed execution of the sentence of life imprisonment and placed the defendant on probation. The state's motion further requested the court order execution of the life sentence.

Because the issue before the court is strictly an interpretation of the statutes, a detailed recitation of the facts that gave rise to the issue is not necessary. The question of whether or not the judge abused his discretion in granting probation in this case is likewise not before the court.

This is a case of first impression in Wisconsin. Because of the policy implications involved in the present state of legislation on the subject we direct the Legislature's attention to the matter.

The trial court took the position that the first degree murder statute says, "shall be sentenced. . . ." It does not say, "shall be punished by imprisonment" nor does the statute prohibit probation. The probation statute[2]

---

[2] "973.09 *Probation*. (1) When a person is convicted of a crime, the court may, by order, withhold sentence or impose sentence and stay its execution, and in either case place him on probation to the department for a stated period, stating in the order the reasons therefor, and may impose any conditions which appear to be reasonable and appropriate. The period of probation may be made consecutive to a sentence on a different charge, whether imposed at the same time or previously."

does not *except* sec. 940.01, Stats. from its provisions. The trial court decided it had authority to grant probation and denied the state's motions for incarceration.

Historically the legislature has used two methods of designating which crimes would not be subject to probation. One method has been to exclude the possibility of probation in the statute setting forth the punishment for a particular crime. *See, e.g.,* sec. 161.28(1), (2) Stats. 1961.[3]

The second method has been to except the possibility of probation for certain crimes in the probation statute itself.[4]

---

[3] "161.28 *Penalties; sentence; probation and parole; evidence and procedure on prior convictions.* (1) Any person who violates s. 161.02(1) or 161.275(1) shall be imprisoned not less than 2 nor more than 10 years. For a second offense or if, in case of a first conviction of violating s. 161.02(1) or 161.275(1) such person had previously been convicted of any violation of the laws of the United States or of any state, territory or district thereof, relating to narcotic drugs or marijuana, such person shall be imprisoned not less than 10 nor more than 20 years. Except for a first offense sentence shall not be withheld or its execution stayed pursuant to ch. 57, and parole shall not be granted until the minimum imprisonment provided for the offense has been served, less good time allowances as provided in ss. 53.11 and 53.12.

"(2) Any person making an illegal sale of narcotic drugs or marijuana to any person under the age of 21 years shall be imprisoned not less than 3 years nor more than 25 years. For a second conviction for such offense, such person shall be imprisoned for not less than 20 years nor more than life. For a third conviction for such offense such person shall be imprisoned for life. Except for a first offense, sentence shall not be withheld or its execution stayed pursuant to ch. 57, and parole shall not be granted until the minimum imprisonment provided for the offense has been served, less good time allowances as provided in ss. 53.11 and 53.12."

[4] This is the present federal method. 18 U.S.C. sec. 3651 states in part: "Upon entering a judgment of conviction of any offense

Wisconsin first provided for probation by C. 541, Laws of 1909. That statute and each successive version has distinguished between withholding imposition of a sentence and staying the execution thereof. For the first thirty-eight years of its existence, the Wisconsin probation law specifically prohibited probation for certain crimes. In C. 541, sec. 2, Laws of 1909, C. 136, sec. 2, Laws of 1913, and C. 30, sec. 5 and C. 615, sec. 2, Laws of 1919, persons convicted of felonies punishable by terms exceeding ten years could not be placed on probation. In 1931, the over-ten year exception was deleted and instead fifteen specific crimes were excepted from the probation law, including first-degree murder. C. 150, sec. 2, Laws of 1931. (sec. 57.01(1), Stats. 1931).

In 1947, however, the probation law was made generally applicable to all felonies with the sole exception of abandonment. C. 477 Laws of 1947 (sec. 57.01(1), Stats. (1947).) *See also, Comment of Interim Committee 1947.*[5] There was no exception made for the various degrees of homicide including first-degree murder.

When the penalty in excess of ten years was abandoned as the criterion for possible probation in 1931 and probation was made available to all convicted felons, except for the fifteen specific crimes therein enumerated including first-degree murder, the first-degree murder statute penalty provision read as follows:

not punishable by death or life imprisonment, any court having jurisdiction to try offenses against the United States when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best. . . ."

[5] "57.01(1) is made general. The exceptions to its application are deleted, except 351.30 (St. 1955 §52.05) (desertion of wife or child). * * * The revision gives the court power to fix and extend the probation period and does not limit total length of probation. . . ." Sec. 57.01, W.S.A. (1957) p. 384.

"340.02 *Murder, first degree.* Such killing, when perpetrated from premeditated design to effect the death of the person killed, or of any human being, shall be murder in the first degree; and the person who shall be convicted of the same shall be punished by imprisonment in the state prison during the life of the person so convicted."

But first-degree manslaughter was not excepted from the probation statute and the penalty provision read as follows:

"340.13 *Penalty.* Any person who shall be guilty of manslaughter in the first degree shall be punished by imprisonment in the state prison not more than ten years nor less than five years."

Both the first-degree murder and first-degree manslaughter statutes used the words, "shall be punished by imprisonment . . ." but it is clear that after the 1931 change in the law execution of sentence was not meant to be mandatory in the case of first-degree manslaughter because the probation statute did not except first-degree manslaughter from those felonies for which probation was authorized. It thus seems clear that whether actual imprisonment was required for a particular crime depended on the probation statute, unless, of course, the particular criminal statute itself specifically excluded probation. Thus in 1947 when probation was made a possible alternative for all felonies except abandonment, probation was a possibility for first-degree manslaughter though that crime still retained a provision that one so convicted "shall be punished by imprisonment. . . ."[6] The same reasoning would apply to the probation statute applying to first-degree murder, since it contained the same language in the penalty clause.

What is said here about first-degree murder also applied to kidnapping for ransom. It was one of the crimes

[6] Sec. 340.13, Stats. 1947.

excepted from the probation statute. The 1931 statute on kidnapping a child for ransom, sec. 340.56, Stats. reads in part as follows:

". . . upon conviction thereof shall be punished by imprisonment in the state prison during the life of the person so convicted. . . ."

The penalty clause was couched in the same language as that for first-degree murder. In 1947 when all felonies except abandonment allowed probation the statute still maintained the same penalty language, sec. 340.56, Stats. 1947.

In 1955 the legislature made a comprehensive revision of the Criminal Code.[7] Sec. 940.01(1), Stats. 1955 reads as follows:

"*First-degree murder.* (1) Whoever causes the death of another human being with intent to kill that person or another shall be sentenced to life imprisonment."

The penalty provisions for kidnapping for ransom, sec. 940.31(2), Stats. 1955 provided likewise that the defendant ". . . shall be sentenced to life imprisonment; . . ."

In construing a statute the primary source of construction is the language of the statute itself. *State v. Consolidated Freightways Corp.*, 72 Wis.2d 727, 737, 242 N.W.2d 192 (1976).

In this state, courts have no inherent power to stay execution of a sentence in a criminal case in the absence of statutory authority except for the limited purpose of affording relief against the sentence itself. *Drinkwater v. State*, 69 Wis.2d 60, 65, 66, 230 N.W.2d 126 (1975). This court has recognized the probation statute gives the court the option of (a) withholding sentence or (b)

---

[7] C. 696, Laws of 1955.

imposing sentence and staying its execution. *Prue v. State,* 63 Wis.2d 109, 112, 216 N.W.2d 43 (1974).

Sec. 940.01 clearly requires a person convicted of first-degree murder be sentenced to life imprisonment. But the statute does not prohibit option (b), above, of imposing sentence and staying execution of sentence. This is what the trial court did.

We agree with the trial court that it had such authority under the probation statute. If the legislature does not want a particular crime to be eligible for probation, it may do what it has done in the past: except the particular offense from the probation statute, as was done prior to 1947, or state in the penalty provision of the particular offense that sentence shall not be withheld or its execution stayed pursuant to the probation statute. In the case before us the statute does clearly provide that sentence shall not be withheld but it does not say that it may not be stayed.

Both the state and the defendant agree that on the issue presented here the draftsmen of C. 696, Laws of 1955, the Criminal Code, intended no change from prior law. The question, as both sides argued it, is whether the pre-1955 statutes allowed probation upon a conviction of first-degree murder.

The state's argument is that in the 1955 Code the draftsmen used the permissive word "may" in the sentencing portion of most crimes. However, in the new first-degree murder statute, the draftsmen retained the word "shall," evincing an intent that the imprisonment be mandatory. This argument does not address the point that what is mandatory is the sentence and that a stay of the sentence is not specifically prohibited.

The state makes two basic arguments in support of its contention that not only the sentence, but also imprisonment is mandatory under sec. 940.01(1). The first

derives from case law. The second is based on legislative history surrounding the enactment of the present criminal code. The state cites *State ex rel. Drankovich v. Murphy,* 248 Wis. 433, 22 N.W.2d 540 (1946) as authority that the first-degree murder statute prior to the change in its sentencing language required mandatory imprisonment. In *Drankovich* at pages 439, 440, this court said:

". . . he may be convicted of murder in the first degree. If so convicted the trial court would have no discretion but to sentence him to state's prison for life, although the prisoner has served eleven years of his sentence and shortly will be entitled to apply for parole . . . The petitioner then would have to commence another life sentence. Because of the peculiar circumstances we have no means of avoiding such result. We can only point out that if he should be prosecuted for and be convicted of murder in the first degree the matter of how much of his term he should justly serve will be a matter for the consideration of the governor in case he applies for pardon."

But the state fails to note that at the time of this decision it was the probation statute itself which disallowed probation for first-degree murder, then sec. 340.02.

Sec. 57.01 (1) Stats. 1945 reads,

"**57.01.** *Suspension of sentence.* (1) Whenever any adult is convicted of a felony, convictions under sections 340.02, 340.03, 340.04, 340.05, 340.06, 340.07, 340.09, 340.39, 340.40, 340.56, 343.09, 343.121, 343.122, 351.16, 351.30 excepted, and it appears to the satisfaction of the court that the character of the defendant and the circumstances of the case indicate that he is not likely again to commit crime, and that the public good does not require that he shall suffer the penalty provided by law, said court may, except as otherwise provided for by law, by order suspend the judgment or stay the execution thereof and place the defendant on probation, stating therein the reasons for the order, which shall be made a part of the record, and may impose as a condition of making the order or of continuing the same in effect

that the defendant shall make restitution or pay the costs of prosecution, or do both."

This section was based on C. 150, Laws of 1931. The *Drankovich* decision was decided April 12, 1946. It was not until August, 1947 that the probation law was amended to apply to all felonies except abandonment. C. 477, Laws of 1947. Thus, the previously quoted language of *Drankovich, supra,* accurately reflected the law when it was written; but on the question before us it carries no weight with respect to the law as it was subsequently amended.

The case of *State v. Duffy,* 54 Wis.2d 61, 194 N.W.2d 624 (1972) is cited by both the state and the defendant. That case contrasted an older statute which said "may be fined . . . or imprisoned" with the amended version, ". . . may be fined and shall be imprisoned. . . ." This court pointed out that prior to the amendment of sec. 343.44(2) Stats., by C. 292, Laws of 1967, the statute read as follows:

"343.44 Driving after license revoked or suspended
" . . .
"(2) Any person violating this section may be fined not less than $50 nor more than $200 or imprisoned not more than 6 months or both except that if a person violates this section after having had his operating privilege revoked because of a conviction of any of the offenses mentioned in s. 343.31, he shall be imprisoned not less than 2 nor more than 30 days for the first violation of this section and shall be imprisoned 60 days for the second such violation and 180 days for the third and each subsequent violation."

This statute as amended by C. 292, Laws of 1967, provides:

"(2) Any person violating this section may be fined not less than $50 nor more than $200 and shall be imprisoned not less than 5 days nor more than 6 months, except that if a person violates this section after having had his operating privilege revoked because of a con-

viction of any of the offenses mentioned in s. 343.31, he shall be imprisoned not less than 5 days nor more than 6 months for the first violation of this section and shall be imprisoned not less than 60 days nor more than 6 months for the 2nd such violation and shall be imprisoned for 6 months for the 3rd and each subsequent violation. . . ." 54 Wis.2d at 63, 64.

The question was whether probation was an available alternative under the amended law. Sentence had been imposed and stayed. However, the stay was pending appeal, and not, insofar as the opinion indicates, a stay pursuant to the probation statute itself.

The court held that to allow probation under sec. 973.09 in light of the amended sec. 343.44(2), *supra,* "would do violence to principles of statutory construction and would contravene the intent of the legislature." Sec. 343.44(2), as a specific statute, was said to prevail over the probation statute.

Because this case is relied on by the state, its analysis will be quoted:

"It is an elementary principle of statutory construction that statutes must be construed together and harmonized. Ordinarily, a specific statutory provision will prevail over a general provision in the penal code relating to the same subject matter. *State ex rel. Gutbrod v. Wolke,* 49 Wis.2d 736, 183 N.W.2d 161 (1971). Most of the penal statutes of this state grant the trial court discretion to either impose a sentence of imprisonment within prescribed statutory limitations or to impose a period of probation pursuant to the provisions of sec. 973.09, Stats. This authority is generally indicated by the language 'may be imprisoned,' which precedes the limitation on the period of imprisonment in the particular provision.' The legislature has enacted but few statutory provisions comparable to the one in the instant case, which expressly provides that a person convicted thereunder 'shall be imprisoned.' If probation were to be available in either case, the legislature would have no purpose in employing the word 'may' in some cases and the word 'shall' in others.

"We arrive at the inescapable conclusion that the legislature left the trial court with no alternative but to impose a sentence of not less than five days upon a person convicted of a violation of this section of the statutes." 54 Wis.2d 64, 65. (Footnote omitted.)

The first-degree murder statute does not now say "shall be imprisoned" but rather, "shall be sentenced." For this reason, *Duffy* and the instant case are distinguishable.

Other cases have distinguished the mandatory "shall" from the permissive "may." *State v. Camara,* 28 Wis.2d 365, 371, 137 N.W.2d 1 (1965) ; *State v. Christopherson,* 36 Wis.2d 574, 583, 584, 153 N.W.2d 631 (1967).

But the question here is not whether "shall" is mandatory, but what is mandated. Sentence is mandated, but not imprisonment. In the language of the probation statute imposition of sentence is required but stay of execution is not prohibited. Finally, the state refers to the specific legislative history concerning enactment of the criminal code. The law, as ultimately enacted, contained no revisor's notes or comments.[8]

---

[8] "As was to be expected, the 1953 code was subjected to wholesale changes. Although the former opponents of the code came around to the view that a rewriting of the criminal law was at least desirable, if not necessary, they continued to be highly critical of the 1953 draft and wanted changes made in nearly every provision. In appraising these changes, it must be borne in mind that many of them are merely verbal although many others are substantive. It cannot be assumed that every change in language imports a change in meaning.

"One principal difference between the two codes is the lack of 'comments' or revisor's notes in the 1955 bill. Both the 1951 and the 1953 bills were accompanied by a great deal of explanatory material intended as aids to construction. But the 1953 Legislature struck out the comments and a majority of the advisory committee were of the opinion that there should be none in the 1955 bill. The 1953 comments are still, of course, a part of the legislative history of the code and will be of some value in understanding its provisions, but their usefulness is greatly im-

The state quotes the Legislative Council Staff for the proposition the new first-degree murder statute reflected no change from the previous statute. The state omits from its reference to legislative history a passage on a page from which it does quote: "There is full recognition of the fact that some of the conclusions expressed herein are subject to debate . . . *penalty changes . . . have not been discussed.*"[9] (Emphasis supplied).

The parties disagree as to the meaning of the following passages from the minutes of the Legislative Council in 1954:

April 29, 1954:

"Judge Boileau read sec. 340.02. (The second-degree murder statute) and asked Mr. Platz to explain again why it should be necessary to change the word 'shall' to 'may.' The present law says 'shall.' Mr. Platz said it was more accurate to say 'may' inasmuch as it does not mean 'shall.' After some further discussion, Judge Goodland suggested that the matter be given some further thought for 24–48 hours, or so."

June 3, 1954:

"No. 2—Determine whether or not the statute shall be amended, or the code, to insert 'shall' rather than 'may' with respect to penalties.

"Judge Boileau and Mr. Tibbs spoke in favor of 'shall' and Mr. Platz in favor of 'may' because, he said since the establishment of probation, 'shall' no longer applies. Mr. Collins moved that the word 'may' throughout the code be changed to 'shall.' The motion was seconded by Mr. Tibbs. The motion was lost."

Thus Mr. Platz argued "may" was appropriate because probation was an alternative disposition. We do not

---

paired by the multitudinous changes in the text of the law." *William A. Platz, The Criminal Code,* 1956 Wis. L. Rev. 350, 353. (Footnote omitted.)

[9] Digest of Chapters 340 and 343 prepared by The Legislative Technical Staff For the Criminal Code Advisory Committee (January 29, 1954).

know, from this history, whether it was the drafting committee's intention that the life sentence alone be mandatory, or also the incarceration. We do not know, moreover, whether the issue here was considered by the draftsmen.

Where there is doubt as to the statutory scheme, penal statutes should be strictly construed in favor of the accused. *E.g., State v. Schaller,* 70 Wis.2d 107, 110, 233 N.W.2d 416 (1975).

The canon of strict construction is grounded on policy. Since it is within the power of the lawmakers, the burden lies with them to relieve the situation of all doubts. 3 *Sutherland on Statutory Construction,* sec. 59.03, p. 7 (3d ed. 1968–1973). And "since the power to declare what conduct is subject to penal sanctions is legislative rather than judicial, it would risk judicial usurpation of the legislative function for a court to enforce a penalty where the legislature had not clearly and unequivocally prescribed it." *Id.,* p. 8.

Based on the wording of the first-degree murder statute and the probation statute, we conclude the trial court correctly interpreted the probation law of this state.[10]

*By the Court.*—Orders affirmed.

---

[10] The dissent argues that sentencing entails a process which, in the normal course, includes the "consideration of the probation alternative as an integral part of the sentencing phase. . . ." The majority has no quarrel with this as a general proposition.

But even if probation is part of the sentencing consideration, it does not follow that the legislature intended the rejection of probation to be a "necessary predicate" to the imposition of sentence. This merely assumes the answer to the question. The probation statute provides that the court may "impose sentence and stay its execution," sec. 973.09, Stats. and *then* place the defendant on probation. Since the execution of sentence may be stayed and the defendant placed on probation, it is obvious that probation is not a sentence. This court has so stated. *Prue v. State,* 63 Wis.2d 109, 114, 216 N.W.2d 43 (1974); *State v. Gib-*

CONNOR T. HANSEN, J. *(concurring)*. I reluctantly concur in the result reached by the majority. I do not agree, however, with the reasoning employed by the majority to reach that result. The plain and clear language of the first-degree murder statute requires that a person convicted of the crime ". . . shall be sentenced to life imprisonment." The statute does not say ". . . shall be imprisoned . . ." nor ". . . shall be punished by imprisonment for life." Were the first-degree murder statute voiced in either of the latter two ways, this court's decision in *State v. Duffy,* 54 Wis.2d 61, 194 N.W.2d 624 (1972), would control and imprisonment would be mandatory; probation inapplicable.

---

*bons,* 71 Wis.2d 94, 97, 237 N.W.2d 33 (1975); *Garski v. State,* 75 Wis.2d 62, 69, 248 N.W.2d 425 (1977). Thus the mandate of sentence does not preclude the grant of probation under the probation statute.

The dissent erroneously attributes to the majority the conclusion that the legislature intended a change in the meaning of the first-degree murder statute in 1955. We do not state the 1955 change in language gave trial judges an option, "heretofore denied them." (Dissent, p. 3) Quite to the contrary, we explained that even under the pre-1955 version, the language "shall be punished by imprisonment" was irrelevant to the question whether probation was then available. Probation, under the pre-1955 scheme, was denied in one of two ways: A specific prohibition of probation in the substantive criminal statute or a specific exception for crime made in the probation statute itself.

Thus, prior to 1955, statutes which contained the language "shall be punished by imprisonment" sometimes precluded probation and sometimes did not, depending on the specific exceptions in the probation or criminal statute. However *Duffy, supra,* is authority for the proposition that where the legislature changes the language in a sentencing provision from "may be imprisoned" to "shall be imprisoned," that deliberate change must be given meaning. Specifically, the change must be construed to exclude the possibility of probation.

Finally, the dissent points to the seeming illogic of the life-imprisonment-or-probation choice given the trial court. But upon a conviction of second-degree murder the court must choose between a minimum incarceration of five years and probation. This is a legislative matter.

The majority opinion attempts to distinguish *Duffy, supra,* on the grounds of a difference in the ". . . shall be imprisoned . . ." and ". . . shall be sentenced . . ." language. That is indeed a distinguishing factor which renders *Duffy, supra,* inapplicable in this case. The majority, however, in its legislative-history analysis of the probation statute and the relation to earlier criminal statutes, initially determined that ". . . shall/may be imprisoned . . ." language in a criminal statute was irrelevant to a determination of whether a probation disposition was possible. I disagree. An interpretation of legislative intent relating to probation possibilities in the pre-1955 criminal code era when the statutory scheme relating to probation and mandatory sentencing was in a confusing state, has little or no bearing on the legislative intent today. The statutory confusion and inconsistencies noted by the majority, which occurred in the pre-1955 era are not present in today's statutory scheme. Probation, under the general provisions of sec. 973.09, Stats., is available upon the conviction of any crime except where the legislature has specifically prohibited it by use of language such as ". . . shall be imprisoned. . ." as was the case in sec. 343.44, as indicated in *Duffy, supra.*

The legislature clearly has not voiced that specific prohibition in the first-degree murder statute. In light of the language of the predecessor statutes to sec. 940.01, Stats., that a person convicted of first-degree murder ". . . shall be punished by imprisonment. . .", it is difficult to conceive that the legislature could now have consciously intended that a person so convicted be either imprisoned for life *or* placed on probation. It is equally difficult to conceive that the legislature would have consciously intended that mandatory imprisonment be required for crimes such as that involved in sec. 343.44, while none was required for the infinitely more serious crime of first-degree murder.

We do not, however, interpret legislative enactments in light of what we believe the legislature could have, or should have, or probably did intend. We are bound by the clear language of the statute. This is especially true where, as here, we deal with the penalty provision of a penal statute. The statute clearly states that the defendant ". . . shall be sentenced to life imprisonment . . ." The defendant was so sentenced. On that basis alone the orders must be affirmed. The legislature enacted the statute, not the courts. If the statute does not say what the legislature intended, then it is the right of the legislature to change it.

I note further that the record here indicates that the trial judge failed to properly dispose of the arson charge. After a finding of guilt on that charge, sentence was permanently stayed. Such a disposition is not within the options given to a trial judge under sec. 972.13, Stats.

I would affirm the orders pertaining to the first-degree murder charge and remand for a proper disposition of the arson charge.

I am authorized to state that Mr. Chief Justice BEIL-FUSS joins in this concurring opinion.

ROBERT W. HANSEN, J. *(dissenting)*. Under the law in this state, one found guilty of first-degree murder "shall be sentenced to life imprisonment."[1] Under the law in this state, one found guilty of driving an automobile after revocation of license "shall be imprisoned not less than 10 days nor more than one year."[2]

---

[1] Sec. 940.01(1), Stats., providing: *"First-degree murder.* (1) Whoever causes the death of another human being with intent to kill that person or another shall be sentenced to life imprisonment."

[2] Sec. 343.44, Stats., providing: "Driving after license revoked or suspended. . . .

"(2) Any person violating this section may be fined not less than $100 nor more than $400 and shall be imprisoned not less

The one who drives his automobile without a license, the majority would agree, must go to jail. However, the majority holds, the one convicted of first-degree murder need not go to jail. As to the licenseless driver, the trial court may not, under the probation statute,[3] stay the jail sentence and place the defendant on probation. However, as to the first-degree murderer, the majority holds that the trial court may, under the same probation statute,[4] stay the sentence of life imprisonment and place the defendant on probation for not less than one year.

That the driver must go to jail, but the murderer need not, results, the majority reasons, from a difference in wording as to the mandated penalty as to each crime involved. The driving-without-a-license law provides that the defendant, upon conviction, "shall be imprisoned." The first-degree murder statute provides that the defendant, upon conviction, "shall be sentenced to life imprisonment."

---

than 10 days nor more than one year in the county jail, except that if a person violates this section after having had his operating privilege revoked because of a conviction of any of the offenses mentioned in s. 343.31, he shall be imprisoned not less than 10 days nor more than one year in the county jail for the first violation of this section and shall be imprisoned not less than 90 days nor more than one year in the county jail for the 2nd such violation and shall be imprisoned for one year in the county jail for the 3rd and each subsequent violation. . . ."

[3] Sec. 973.09, Stats., providing in part: *"Probation.* (1) When a person is convicted of a crime, the court may, by order, withhold sentence or impose sentence and stay its execution, and in either case place him on probation to the department for a stated period. . . .

"(2) The original term of probation shall be:

"(a) For misdemeanors, not less than 6 months, nor more than 2 years; . . ."

[4] Sec. 973.09(2)(b), Stats., continuing: "(b) For felonies, not less than one year nor more than either the statutory maximum term of imprisonment for the crime or 3 years whichever is greater." [In the instant case, the probation term was fifteen years. It could have been one year under the rationale of the majority opinion.]

Under the driving-without-a-license law, it is clear that the sentencing court has no option to stay sentence and place the defendant on probation.[5] Under the first-degree murder law, the majority contends the trial court is constrained to impose sentence, but can stay it and place the convicted murderer on probation for a year or more. Thus a sharp distinction is drawn between the meaning of "shall be imprisoned" and "shall be sentenced to life imprisonment."

Until the revision of the state criminal code in 1955, the first-degree murder statute provided that one convicted of first-degree murder "shall be punished by imprisonment in the state prison during the life of the person so convicted."[6] The majority opinion concedes that if it still read that way, a trial judge could not stay sentence and place a convicted first-degree murderer on probation.[7] The majority is thus contending that the 1955 change from "shall be punished by imprisonment" to "shall be sentenced to life imprisonment" resulted in giving trial judges the option, heretofore denied them, to stay sentence and place the convicted first-degree murderer on probation for at least a year.

This is one construction as to the change made and its consequences. It is based on a complete separation be-

[5] *See: State v. Duffy*, 54 Wis.2d 61, 65, 194 N.W.2d 624 (1972), holding that the driving-without-a-license law ". . . left the trial court with no alternative but to impose a sentence of not less than five days upon a person convicted of a violation of this section of the statutes." *See also: State v. Sittig*, 75 Wis.2d 497, 249 N.W.2d 770 (1977).

[6] Sec. 340.02, Stats., the predecessor statute, reads: *"Murder, first degree.* Such killing, when perpetrated from premeditated design to effect the death of the person killed or of any human being, shall be murder in the first degree; and the person who shall be convicted of the same shall be punished by imprisonment in the state prison during the life of the person so convicted."

[7] *See:* Majority opinion, distinguishing *State v. Duffy, supra,* n. 5: "The first-degree murder statute does not say 'shall be imprisoned' but rather 'shall be sentenced.' For this reason, *Duffy* and the instant case are distinguishable."

tween the imposition of sentence, and the staying thereof to put a defendant on probation. This construction completely equates "sentenced to life imprisonment" with the imposition of the sentence, not with the sentencing process, with a stay for probation purposes no part of being "sentenced." As the majority puts it, under the changed statute, "Sentence is mandated, but not imprisonment." That is one construction of the change effected, but the writer submits it is only one.

Equally reasonable is the construction of the phrase "shall be sentenced to life imprisonment" as referring to the sentencing process—consideration of the probation alternative as an integral part of the sentencing phase—rather than as something a judge reaches after imposing sentence. This unitary approach to consideration of probation or incarceration as part of a single process is evident in the case of *Anderson v. State*[8] recently decided by this court.

There our court was asked to establish or recognize a criteria for the withholding of sentence or staying of sentence to grant probation different than that for the period of incarceration deemed appropriate by the trial court. We rejected any separation between the sentence imposed and a finding that probation is appropriate, or any different criteria to be met as to either, holding: "Rejection of probation is a necessary predicate to a determination that incarceration is required in a particular case."[9] As to the intertwining of considerations of probation and incarceration as sentencing alternatives, this court said:

"It would not make sense to have one standard for the exercise of discretion as to the granting of probation and another and different standard for the exercise of judicial discretion as to the appropriate period of incarceration.

[8] 76 Wis.2d 361, 251 N.W.2d 768 (1977).
[9] *Id.* at 366.

These are not two sides of a single coin. They are part of the same side of the same coin—the determination of the appropriate disposition." [10]

It ought not be considered an unreasonable construction of the changed 1955 first-degree murder statute that the legislature, in the exercise of legislative discretion, considered rejection of probation as "a necessary predicate" to requiring that convicted first-degree murderers "shall be sentenced to life imprisonment." The legislature, as did this court, could consider rejecting probation and fixing an appropriate period of confinement as "part of the same side of the same coin—the determination of the appropriate disposition." The change made in the 1955 revision is capable of being understood in either of two senses, and this being so, ". . . resort to matters outside the face of the statute is permitted to determine the meaning thereof, primarily for the purpose of ascertaining legislative intent." [11]

Since there are two reasonable constructions of the substituted phrase, "shall be sentenced to life imprisonment," we thus go to the legislative history to determine the legislative intent. Here that is a brief trip. The majority opinion correctly states: "Both the state and the defendant agree that on the issue presented here the draftsmen of C. 696, Laws of 1955, the Criminal Code, intended no change from prior law." At least for the purpose of argument, defendant accepted "the first conclusion which the State draws from the 1955 Legislation, that is, the Legislature did not intend to change the

[10] *Id.* at 366. *See also: Prue v. State,* 63 Wis.2d 109, 116, 216 N.W.2d 43 (1974), holding: ". . . it is true that the word 'sentence' or 'sentencing' may be and often is used in a more general sense than we have concluded it is used in secs. 53.43 and 973.09. . . ."

[11] *Edelman v. State,* 62 Wis.2d 613, 619, 215 N.W.2d 386 (1974).

penalty for first degree murder or the operation of that penalty."[12]

The position of the state, stated in its brief, is that the legislature ". . . did not intend to change either the penalty or the operation of that penalty in the revision."[13] The legislative history makes clear that, as to the penalty for life imprisonment, "No change intended."[14] The major change effected by the 1955 revision was the elimination of minimum sentences, changing "shall" to "may," as to most crimes, but not as to first-degree murder. An early draft of proposed revisions did suggest the substitution of "may" for "shall," but this was rejected long before the proposal reached the legislature. Actually, only two statutes, first-degree murder and kidnapping for ransom,[15] retained the "shall" mandate, both involving mandatory sentencing to life imprisonment.[16]

---

[12] Defendant in Error-Respondent Brief, page 15.

[13] Plaintiff in Error-Appellant Brief, page 15.

[14] Legislative Council Technical Staff, in 1954 compilation stating:

"340.02 (first-degree murder statute number in early draft before renumbered to 340.01) *No change intended.* Present 340.02 is restated in sec. 340.01 of the proposed code . . . . [Emphasis supplied.]

" 'No change intended' is used to indicate that the purpose of the code draft is not to effect a change in the scope of criminal liability and that the new section *is a substantial restatement of the present law.*" [Emphasis supplied.] (Digest of chs. 340 and 343, Stats. 1951, prepared by the Legislative Council Technical Staff for the Criminal Code Advisory Committee, January 29, 1954.)

[15] Sec. 940.31 (2), Stats., providing: "(2) Whoever violates sub. (1) [kidnapping by force or threat of imminent force] with intent to cause another to transfer property in order to obtain the release of the victim shall be sentenced to life imprisonment; but if his victim is released without permanent physical injury prior to the time the first witness is sworn at the trial the defendant may be imprisoned not more than 30 years."

[16] Platz, *The Criminal Code,* 1956 Wis. L. Rev. 350, 355, the author stating: "The second objective is accomplished principally

Thus there is no basis in the legislative history of the 1955 revision for even contending that the legislature intended any change in the penalty as to nonavailability of probation when it substituted "shall be sentenced to life imprisonment" for "shall be punished by imprisonment in the state prison during the life of the person so convicted." Neither party on this appeal contends that any change was intended, and there is no basis in the legislative history for so contending.

Having established the relevant legislative intent in making the 1955 substitution of phraseology, *i.e.*, "no change intended," it follows that the substitute phrase "shall be sentenced to life imprisonment," is to be construed as having the same meaning as its predecessor phrase "shall be punished by imprisonment in the state prison during the life of the person so convicted."

This construction is further supported by the rule of statutory construction that a statute should not be construed so as to work absurd or unreasonable results.[17] If not absurd, the result under the majority opinion is at least unreasonable that a trial judge has two alternatives in the determination of an appropriate penalty for a defendant convicted of first-degree murder: (1) Incarceration for life, or (2) sentence stayed, and defendant placed on probation for at least a year.

by eliminating nearly all minimum penalties. (The only exceptions in the code are first-degree murder and kidnapping for ransom (minimum of life) and second-degree murder (minimum of 5 years). Code §§940.01, 940.02, 940.31(2).)"

And at 382, 383: "It will be observed that penalty provisions in the code invariably say the offender *'may* be fined . . . ,' except where the penalty is life imprisonment. The permissive 'may' was used instead of the mandatory 'shall' because of the probation law which makes it inaccurate to say the offender 'shall' be fined or imprisoned or both."

[17] *Estate of Evans*, 28 Wis.2d 97, 101, 135 N.W.2d 832 (1965), citing *Isaksen v. Chesapeake Instrument Corp.*, 19 Wis.2d 282, 120 N.W.2d 151 (1963); *Teamsters Union Local 695 v. Waukesha County*, 57 Wis.2d 62, 69, 203 N.W.2d 707 (1973).

The 1955 Criminal Code revision reflects in considerable measure the thinking of advocates of indeterminate sentencing. Except as to first-degree murder, second-degree murder and kidnapping for ransom, minimum sentences were abolished and "shall" changed to "may" to give trial courts a broad area of discretion in the selection of an appropriate sentencing disposition. However even the most fervent advocate of indeterminate sentencing must blanch at the result of limiting alternative dispositions of a case to life imprisonment on the one hand, or probation for a year or more, on the other, with intermediate alternative dispositions excluded. Placing two alternatives as to disposition at opposite ends of the severity spectrum makes little sense, whether one believes in the concept of indeterminate sentencing or the idea of determinate penalties for transgressions.

Having construed the 1955 revision that "shall be sentenced to life imprisonment" has the same meaning as its predecessor, "shall be punished by imprisonment," the holding of this court in *Duffy*[18] applies and controls. There the court considered the general probation statute providing that when a defendant is convicted of any misdemeanor, the court may, by order, ". . . impose sentence and stay its execution, and . . . place him on probation. . . ."[19] Despite this general provision the court in *Duffy* held that the mandatory penalty "shall be imprisoned" made imposition of sentence and stay inappropriate, and required that the defendant convicted of driving-without-a-license be sentenced to confinement in the county jail for the minimum period of incarceration statutorily mandated.

In the case before us, the general probation statute similarly provides that when a defendant is convicted of any felony, the court may, by order ". . . impose sentence and stay its execution and . . . place him on probation.

[18] *State v. Duffy, supra,* n. 5.
[19] *Id.* at 64, quoting relevant portions of sec. 973.09, Stats.

. . ." Despite such general provision, since "shall be sentenced to life imprisonment" is construed to mean "shall be punished by imprisonment," the first-degree murder statute here requires that one convicted of first-degree murder be sentenced, without stay of execution and granting of probation, to life imprisonment.

What is held in *Duffy* as to misdemeanors applies to felonies as well. The reason in both situations is the same. As stated in the *Duffy* decision, ". . . a specific statutory provision will prevail over a general provision in the penal code relating to the same subject matter."[20] The general provisions of the probation statute do not control where ". . . express language of the penalty provisions of the present statute requires that a person convicted under this section be subject to imprisonment."[21] To hold in a first-degree murder case that the trial court may nevertheless ". . . withhold the sentence or impose the sentence and stay its execution pursuant to sec. 973.09" would, exactly as *Duffy* held as to driving-without-out-a-license, ". . . do violence to principles of statutory construction and would contravene the intent of the legislature."[22]

Accordingly, the trial court orders appealed from should be reversed and the stayed sentence and grant of probation set aside. The writer would then remand the

[20] *Id.* at 64, citing *State ex rel. Gutbrod v. Wolke,* 49 Wis.2d 736, 183 N.W.2d 161 (1971).

[21] *Id.* at 64, the court adding at 65: "The legislature has enacted but few statutory provisions comparable to the one in the instant case, which expressly provide that a person convicted thereunder 'shall be imprisoned.' If probation were to be available in either case, the legislature would have no purpose in employing the word 'may' in some cases, and the word 'shall' in others."

[22] *Id.* at 64, the court concluding at 65, that: "We arrive at the inescapable conclusion that the legislature left the trial court with no alternative but to impose a sentence of not less than five days upon a person convicted of a violation of this section of the statutes." (Referring to sec. 343.44(2), Stats.)

case for imposition of the statutorily mandated sentence —life imprisonment.

I am authorized to state that Mr. Justice LEO B. HANLEY joins in this dissent.