MARK MUSOLF, Secretary Department of Revenue
You ask whether the Miller Brewing Company's proposed sponsorship of the Miller High Life National Doubles Bowling Tournament would violate sec. 66.054 (4)(a), Stats., or the provisions of Wis. Adm. Code section Tax 7.23.
Section 66.054 (4)(a), Stats., reads in relevant part:
 No brewer, bottler, or wholesaler shall furnish, give, lend, lease or sell any . . . thing of value, directly or indirectly . . . to any Class "B" licensee, or to any person for the use, benefit or relief of any Class "B" licensee . . . .
Section 66.054 (15)(a), Stats., makes violation of this provision a misdemeanor punishable by a fine of not more than $500, by imprisonment in the county jail for a term not to exceed ninety days, or by both. Additionally, revocation of license is also possible.
In my opinion, sponsorship of the bowling tournament would not violate sec. 66.054 (4)(a), Stats. We are dealing with the construction of a penal statute and must, therefore, strictly construe its provisions in favor of a defendant. State v. Wilson,77 Wis.2d 15, *Page 396 252 N.W.2d 64 (1977). The language of the statute is ambiguous as to the meaning of "thing of value." The concern, for example, that underlies this request for my opinion presumably is that the brewer might be furnishing something of value to those bowling establishments that possess a Class "B" license and that participate in the tournament. The "thing of value" is, I suppose, a temporary increase in business or good will that might potentially be generated by the tournament. I do not think that this constitutes furnishing anything of value, directly or indirectly, within the meaning of sec. 66.054 (4)(a), Stats. If sec. 66.054 (4)(a), Stats., is given so broad an interpretation, it would proscribe any advertising activity on the part of a brewery. The advertising of a particular fermented beverage would directly benefit Class "B" retail establishments since that is where retail sales occur.
Proper interpretation of the language of sec. 66.054 (4)(a), Stats., requires that legislative intent be ascertained. BoyntonCab Co. v. Neubeck, 237 Wis. 249, 296 N.W. 636 (1941). Section 66.054 (4), Stats., has been construed by an earlier Attorney General Opinion. 67 Op. Att'y Gen. 337, 338 (1978). There it was said:
 The object and intent of sec. . . . 66.054 (4) . . . is to prevent manufacturers and wholesalers from acquiring complete or partial control of specific class B retailers, directly by owning them or indirectly by creating financial or moral obligations. The purpose is clearly to assure the freest competition in the industry by preventing monopolistic practice, and to divorce entirely the wholesaler from the class B retailer.
(Emphasis in the original.)
In my opinion, any flow of benefit from brewer to Class "B" retailer as a result of Miller's sponsorship of the bowling tournament is so remote to such sponsorship as not to fall within the language of sec. 66.054 (4)(a), Stats. It is a well-settled principle of statutory construction that statutes enacted as a legitimate exercise of the police power ought not to be given a construction that is "unnecessary to the furtherance of the main purpose of the statute." 66 Op. Att'y Gen. 277, 279 (1977); Enosv. Hanff; 98 Neb. 245, 152 N.W. 397, 400 (1915). In the present case, we do not have an attempt by a brewer to buy or control a Class "B" retailer or to create a financial or moral obligation that would facilitate control by the brewer. The *Page 397 
real and direct benefit provided by the brewery is to tournament winners and the discernible indirect benefit accrues to the brewer itself through its promotional activities. There is no obligation on the part of any participating bowling establishment to participate in the tournament or to be in any way obligated to Miller Brewery. Participating bowling establishments are not required to serve Miller beer and can continue to sell any other brand of fermented malt beverages they desire. Additionally, it does not appear that the sponsoring brewer picks any particular Class "B" retailers for inclusion within its promotional scheme. All tournament arrangements are made by the Wisconsin Bowling Proprietor's Association.
On the basis of the facts before me the benefit, if any, enjoyed by Class "B" retailers that participate in the bowling tournament, would be entirely too speculative and remote to constitute a violation of sec. 66.054 (4)(a), Stats.; the proposed promotion also lacks any of the evil that sec. 66.054 (4)(a), Stats., was designed to control.
You also ask whether the proposed sponsorship violates provisions of Wis. Adm. Code section Tax 7.23 which reads in part: "No brewer, bottler or wholesaler of fermented malt beverages may sponsor any event conducted on premises operated under a retail Class `B' fermented malt beverage license or promoted by a retail Class `B' fermented malt beverage license." Wis. Adm. Code section Tax 7.23 (2) (a).
"Event" is defined to include bowling tournaments. Wis. Adm. Code section Tax 7.23 (1)(a). "Sponsor" is defined in the following manner: "`Sponsor' means to underwrite in whole or in part the cost of an event by providing signs, advertising in score cards or on scoreboards and fences or by providing equipment, prizes, trophies, entertainment or other things of value." Wis. Adm. Code section Tax 7.23 (1)(d)
It is my understanding that the prize money awarded state winners is to be derived from participant's entry fees. This presents no violation of the administrative rules. I also understand that the Miller Brewing Company will contribute $125,000 in prize money to state winners who will compete in Reno, Nevada, in a national championship. If this prize money is distributed only at the national championship and not given to an association of Class "B" licensees within this state, I cannot see that the rule proscribing the provision of prizes and *Page 398 
trophies is violated. I do not have sufficient information concerning the type of advertising that Miller Brewery plans for the proposed tournament and must, therefore, defer to the Department of Revenue's judgment as to whether its own administrative rules might be violated by Miller's actions. Clearly, Miller may not provide signs or advertise in score cards or on scoreboards and fences. It appears, however, that more general advertisements of the tournament that do not specify the Class "B" premises on which the competition will be held would not violate either sec. 66.054 (4) (a), Stats., or any provisions of Wis. Adm. Code section Tax 7.23.
In summary, the benefits to be derived from Miller's sponsorship of this tournament accrue to Miller Brewery and the actual contestants. Any benefit derived by Class "B" licensees is entirely too speculative and remote to constitute a violation of either sec. 66.054 (4), Stats., or Wis. Adm. Code sectionTax 7.23. I would add in closing that while Wis. Adm. Code sectionTax 7.23 appears to be a permissible extension and interpretation of sec. 66.054 (4)(a), Stats., I could very well understand why a brewer or a Class "B" retailer threatened with prosecution under sec. 66.054 (4)(a), Stats., would argue that Wis. Adm. Code section Tax 7.23 exceeds the bounds of correct interpretation and is an unwarranted extension of legislative intent.
BCL:JEA:scj